UNITED STATES of America, Plaintiff–Appellee,

v.

Anthony Tyrone ANDERSON (90–5313) and Michael Wayne McNeil (90–5507), Defendants–Appellants.

Nos. 90–5313, 90–5507.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 6, 1990.

Decided Jan. 15, 1991.

---

W. Hickman Ewing, Jr., U.S. Atty., Frederick H. Godwin, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Memphis, Tenn., for U.S.

James D. Gass (argued), Jackson, Tenn., for Anthony Tyrone Anderson.

Lloyd R. Tatum (argued), Tatum & Tatum, Henderson, Tenn., for Michael Wayne McNeil.

Before GUY and BOGGS, Circuit Judges, and BERTELSMAN, District Judge.*

---

\* The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

BOGGS, Circuit Judge.

Defendants Anthony Anderson and Michael McNeil appeal from their convictions for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). Both defendants appeal from the district court's denial of their motions to suppress the firearms they possessed. Anderson also appeals from his enhanced sentence under the armed career criminal provisions of 18 U.S.C. § 924(e). That section provides that a person convicted of violating § 922(g) who has previously been convicted of three violent felonies, a term defined in § 924(e)(2)(B), shall receive a minimum fifteen-year sentence, not subject to suspension, probation, or parole. Finally, Anderson contends that he was selectively prosecuted, and that inclusion of his prior conviction for burglary as one of his three prior felonies under § 924(e) violated his right to due process. For the reasons that follow, we affirm the district court on all counts.

## I

The defendants were apprehended as the result of chance and good police work. Sergeant William Blackwell and Haywood County Sheriff Raymond Russell were driving one afternoon along Highway 76 near the line between Madison and Haywood counties in Tennessee. The officers knew that this area had recently experienced many burglaries. The officers noticed a small blue foreign car quickly backing out of a residential driveway, almost hitting a truck on Highway 76. They noticed that both of the occupants of the car were black, and both officers personally knew that the occupants of the residence that the car backed out of were white. As the small car drove by the officers at a high rate of speed, the officers noticed that the car was so heavily loaded that the chassis was rubbing against the right tire. The officers tried to get a license check on the car, but could not because the license plate was located in the rear windshield and not clearly visible.

The officers followed the car onto westbound I–40. The blue car entered the interstate highway quickly and weaved in and out of traffic. Still unable to read the license plate despite the use of binoculars, the officers stopped the car on the highway.

The officers approached the car from different sides, and each officer spoke with a different defendant. Neither Anderson nor McNeil could produce a driver's license or any other form of identification. The officers then noticed that a quilt was covering many things loaded on the car's back seat. In response to Officer Russell's question, Anderson said that the things in the back seat belonged to a Margaret Reed. Anderson said that the two of them were moving Ms. Reed from Brownsville to Memphis. Anderson then opened the door to the back seat, lifted the quilt, and showed Russell a microwave.

Officer Russell, coincidentally, knew Margaret Reed personally. He called the police radio dispatcher and told the dispatcher to call Reed and ask her if she was moving to Memphis and if she owned a microwave. Reed was contacted, and told the dispatcher that she was not moving to Memphis and did not own a microwave.

Confronted with Reed's denial of their story, the defendants changed their tune. Anderson said that instead of moving Reed from Brownsville to Memphis, he was really moving a person named Lee from Memphis to Nashville. This explanation sounded disingenuous to the officers because the car was headed toward Memphis and away from Nashville. The defendants' new story also had other inconsistencies. Anderson said that the blue car belonged to his cousin, while McNeil said that it belonged to Anderson's girl friend.

Sergeant Blackwell decided at this point that the goods in the back seat might be stolen. The officers then told the defen-

dants that the officers would take them back to the county jail for further investigation. The officers told the defendants that they were free to leave, but that they would not be allowed to drive the car because neither defendant was carrying a driver's license. Both defendants and their car were driven back to the county jail by the officers.

Both officers testified that the defendants were not under arrest at the time they were told to accompany the officers to the jail. Nevertheless, the booking sheet from the jail states that the defendants were arrested at "1400" (2 p.m.), that they arrived at the station at 1445, and Officer Russell testified that he read the defendants their rights at 1513 and 1517. Both officers testified that the defendants had free access to the car during their initial confinement, but were not given the keys. The firearms (two pistols, a shotgun, and a Marlin rifle) were found in and around the defendants' car on the Haywood County Jail property at some undetermined point during the defendants' confinement. Three of these weapons had been recently stolen from their owners. The defendants were not formally booked until 1833, over 4½ hours after they were first told to accompany the officers back to the county jail.

Sheriff Russell referred the defendants to the Federal government for potential prosecution under § 922(g). The United States Attorney subsequently decided to commence the prosecution. The United States Attorney decided to seek the enhanced sentences available under § 924(e) after the defendants filed motions to suppress the firearms. The defendants' appeals were timely filed after their convictions and sentencing.

## II

Anderson first contends that he was selectively and vindictively prosecuted. He rests his contention on the activity of Sheriff Russell rather than the United States Attorney. Anderson provides evidence that Sheriff Russell does not perform background checks on all persons arrested in his jurisdiction to determine if any have prior felony records. Therefore, there might be some persons who could have been referred to the United States Attorney's office for prosecution under § 922(g) who were not referred.

Anderson contends that this practice violates the United States Constitution. Anderson contends that under *Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), the government must treat all similarly-situated lawbreakers similarly. The fact that Sheriff Russell works for a county in the state of Tennessee and the U.S. Attorney works for the United States does not deter Anderson. Anderson alleges, without any supporting facts, that the United States had no discretion in deciding whether to prosecute cases referred to him by Sheriff Russell.

■ Anderson has confused two separate prosecutorial actions that have been held to violate the Due Process Clause, selective prosecution and vindictive prosecution. A prosecutor selectively prosecutes someone when three things occur. First, he must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. *Wayte,* 470 U.S. at 608 n. 10, 105 S.Ct. at 1531 n. 10. Second, he must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the *group* which the defendant belongs to. *Wayte,* 470 U.S. at 609, 105 S.Ct. at 1531–32.

■ A prosecutor vindictively prosecutes a person when he or she acts to deter the exercise of a protected right by the person prosecuted. *United States v. Andrews,* 633 F.2d 449, 453–55 (6th Cir.1980), *cert. denied,* 450 U.S. 927, 101 S.Ct. 1382, 67 L.Ed.2d 358 (1981). A person who claims he has been vindictively prosecuted must show that the prosecutor has some "stake" in deterring the petitioner's exercise of his

rights, and that the prosecutor's conduct was somehow unreasonable. *Id.*

█ Anderson has not established a prima facie case under either doctrine. Anderson has not shown that he was part of a group that the prosecutor was trying to harm by prosecuting him. Anderson has also not shown that he was singled out for prosecution because he has exercised any constitutional right. In the absence of either allegation, Anderson's contention that he was improperly prosecuted has no merit.

### III

█ Anderson also contends that his enhanced sentence under § 924(e) denies him due process because other criminals with the same criminal record would not be subject to enhanced sentencing in other circuits. Specifically, Anderson notes that one of his three prior felony convictions is for burglary. Anderson contends that the circuits are split regarding the definition of "burglary" for the purposes of § 924(e). Since the circuit split would result in a criminal being subjected to a different sentence depending upon the site of his conviction, Anderson contends that his right to due process is violated.

This argument has become moot regardless of its theoretical merit. The Supreme Court resolved the circuit split in *Taylor v. United States,* —— U.S. ——, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The Court defined "burglary" as "any crime . . . having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor,* 110 S.Ct. at 2158. Anderson was convicted of violating Tennessee's burglary statute, and it contains all of these elements. Therefore, the inclusion of Anderson's prior burglary conviction was proper.

### IV

### A

Both defendants made a motion to suppress before the district court, each motion resting on a different alleged violation of the fourth amendment. Both motions contended that the firearms were discovered subsequent to a fourth amendment violation, and that therefore the firearms should be suppressed. McNeil's motion alleged that the firearms were illegally seized because the initial stop of the defendants on the highway was unconstitutional. Anderson's motion did not contest the legality of the initial stop, instead contending that the defendants had been arrested without probable cause before the discovery of the firearms. We will review each motion in turn.

### B

We first pause to note that we review the factual findings underlying a district court's denial of a motion to suppress under the "clearly erroneous" standard. *United States v. Morgan,* 743 F.2d 1158, 1162 (6th Cir.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985). In reviewing the district court's denial of McNeil's and Anderson's motions to suppress, we will also determine if the officers' seizure of the defendants on the highway was constitutional. We note that seizures intended to further investigation of possibly criminal behavior do not require a showing of probable cause if they are justified by specific and articulable facts that give rise to a reasonable suspicion of criminal activity. *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–81, 20 L.Ed.2d 889 (1968). This standard will govern our review of McNeil's motion. As Anderson contends that the defendants were arrested without probable cause by the officers on the highway despite the lack of formal arrest procedures, *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), we must examine the facts to determine if the officers had probable cause to make an arrest at that time. "It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion." *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The Supreme Court has stated that "[p]robable cause exists where the facts and circumstances within [the officers'] knowledge and of which they had reason-

ably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that 'an offense has been or is being committed [by the person to be arrested].' " *Dunaway*, 442 U.S. at 208 n. 9, 99 S.Ct. at 2254 n. 9 (citations omitted).

## C

■ McNeil contends that the officers did not have a reasonable suspicion that the defendants were engaged in criminal activity. McNeil correctly notes that one of the reasons that the officers gave for stopping the defendants was the defendants' race. McNeil relies on this fact and contends that defendants were stopped solely because of their race. If McNeil's contention were correct, the initial stop of the defendants would be unconstitutional because suspicions based solely on the race of the person stopped cannot give rise to a reasonable suspicion justifying a *Terry* stop. *United States v. Brignoni–Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2581–82, 45 L.Ed.2d 607 (1975).

■ The district court specifically found, however, that the officers did not stop the defendants solely because of their race. The district court noted that the defendants had backed their car out of the residence at a high rate of speed, and that the car was so heavily loaded that the chassis rubbed against the rear right wheel. The defendants' license plate was also not easily visible while the car was moving because it

was placed in the rear windshield rather than in the normal location on the rear of the car. Given that the area had recently experienced a spate of burglaries, the district court reasoned that these facts combined to create a reasonable suspicion in the minds of the officers, justifying a *Terry* stop for investigative purposes.

■ We cannot find that the district court was clearly erroneous in rejecting the motion to dismiss. This court has held that reasonable suspicion can be based on a totality of circumstances no one of which standing alone would create a reasonable suspicion. *United States v. Knox*, 839 F.2d 285, 288–90 (6th Cir.1988), *cert. denied*, 490 U.S. 1019, 109 S.Ct. 1742, 104 L.Ed.2d 179 (1989). The district court specifically found that the officers' reasonable suspicion was founded on the combination of potentially suspicious facts. As McNeil has not offered any evidence that raises questions about the officers' veracity, we have no basis for reversing the district court.

## D

■ We now examine Anderson's contention that the defendants were arrested on the highway when the officers told the defendants to accompany them to the county jail. If the defendants were arrested without a warrant by the officers on the highway, then the arrest is constitutional only if officers can show that probable cause existed at the time of the arrest.[1]

---

1. Because we hold that the officers had probable cause to arrest the defendants on the highway after the defendants' first story was proven false, we need not decide, as the government urges us to, whether the officers' actions in transporting the defendants to the county jail and detaining them there could also be held constitutional as a continuation of the initial *Terry* stop. The officers detained the defendants in transit and at the jail for almost 5 hours before formally booking them. We note that the Supreme Court has stated that investigative stops justifiable under *Terry* may not be of indefinite duration, *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). The Court in *Sharpe* held that a 20–minute detention was a constitutional *Terry* stop, noting that "it [is] appropriate to examine whether the police diligently pursued a means of investiga-

tion that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe*, 470 U.S. at 686, 105 S.Ct. at 1575. We express no view on whether the almost 5–hour detention would meet the standard in *Sharpe*.

Because we hold that probable cause exists for the arrest of the defendants, we also have no cause to consider the opinion of the Seventh Circuit in the recent case of *United States v. Chaidez*, 919 F.2d 1193 (October 25, 1990). The Seventh Circuit held in *Chaidez* that police actions in detaining and restraining suspects need not be evaluated on a bi-polar scale, where the acts must be classified either as a *Terry* detention requiring only a "reasonable suspicion" or as a *de facto* custodial arrest requiring probable case. The Circuit instead held that such acts must be evaluated under a "reasonableness"

We hold that the officers had probable cause to suspect the defendants had committed a crime, and we therefore hold that the officers' actions in transporting the defendants to the county jail were constitutional.

We begin by noting that we are not deciding that the defendants actually were arrested by the police on the highway. To win on his motion, Anderson must prove both that he was arrested *and* that the arrest was without probable cause. As we hold that probable cause existed to justify a warrantless arrest of defendants on the highway, we need not find that they actually were arrested to deny Anderson's motion.

We believe that the entire situation surrounding the stop and ensuing investigation of defendants gave the officers probable cause to arrest them on the highway. The officers had the following information available to them at the moment they decided to bring the defendants to the county jail. They had observed a car heavily loaded with goods speeding away from an area known to them to have recently experienced a spate of burglaries. They also knew that the defendants were not leaving their own house so quickly: the owners of the house were white, while the defendants are black. Once stopped, the defendants produced no identification of any sort.

The defendants also had lied to the officers and given them implausible explanations when asked where they were transporting the goods in the back seat. The defendants had lied to the officers when they said they were moving Margaret Reed to Memphis. They had lied again when they implied that the microwave in the back seat belonged to Ms. Reed. The officers had also found their next explanation, that they were moving a person named Lee *from* Memphis, wholly implausible. For starters, the defendants were headed toward Memphis, not away from it, when

they were stopped. The defendants were also unable to remember the first name of the person whom they were allegedly moving to Memphis. Finally, the officers also knew that each defendant had told the officers that a different person owned the car they were driving.

We believe that all of these events combine to produce probable cause to arrest the defendants on the highway. The test for the existence of probable cause is wholly objective. Probable cause exists when a "man of reasonable caution," *Dunaway*, 442 U.S. at 208, n. 9, 99 S.Ct. at 2254, n. 9, would be warranted in the belief that the person arrested had or will commit a crime. It is entirely reasonable for the officers to have reached the conclusion that the defendants were racing away from the house and the area because they were transporting booty from another of the recent spate of burglaries. The defendants were unable to give the officers a plausible explanation of their behavior that would dispel that conclusion. The defendants' lack of identification and the placement of their car's license plate in the rear windshield prevented their easy identification; both of these facts could support a conclusion that the defendants were up to no good. "Although many of these circumstances, taken alone, arguably could have been consistent with innocent or criminal behavior, when viewed in their totality they would lead a prudent person to believe that [defendants were] engaged in criminal activity." *United States v. Holzman*, 871 F.2d 1496, 1504 (9th Cir.1989).

Other courts have found elements of these events to uphold a finding of probable cause in other circumstances. The Fifth Circuit has held that a suspect's lying to law enforcement about the origin of his travel would, in conjunction with other facts establishing a reasonable suspicion that the person was involved in criminal activity, justify a man of reasonable cau-

standard if they are more intrusive than a typical *Terry* stop but not intrusive enough to constitute a custodial arrest. *Chaidez*, at 1197–98. A variation of the facts before us, such as an inability on the part of the police to reach Margaret Reed rather than Ms. Reed's providing

clear proof that the defendants' original story was a lie, might have encouraged us to consider the Seventh Circuit's "sliding scale" approach. As the case stands, we have no occasion to offer an opinion regarding the Seventh Circuit's standard.

tion in finding probable cause to perform a warrantless arrest. *United States v. Espinoza–Seanez*, 862 F.2d 526, 533 (5th Cir. 1988). *Accord State v. Valenzuela*, 121 Ariz. 274, 589 P.2d 1306 (1979) ("A false answer in response to questions by the police based on the police officer's personal knowledge may constitute probable cause"). Among the factors that the Fifth Circuit noted helped to create reasonable suspicion in *Espinoza–Seanez* was evidence that a car is "riding low in the back" and is traveling from an area where the police "had suspicion that smuggling activity was taking place." *Espinoza–Seanez*, 862 F.2d at 531, 533. This combination of factors is close to, although weaker than, those we face here, and we see no reason to disagree with the Fifth Circuit's conclusion that they could give rise to a finding of probable cause.

Our holding is not disturbed by the observation that it is unclear whether the officers themselves thought they had probable cause. While both officers testified that they did not arrest the defendants on the highway, the defendants' booking sheets record them as being arrested at 1400, which is approximately the time when the officers made the decision to transport them back to the jail. It is true that the government states in its brief that "when the firearms were found in the vicinity of the car, the officers then had probable cause to arrest the individuals." But it is also true that Sergeant Blackwell testified that he decided that the goods in the car could have been stolen after hearing that Ms. Reed was not moving and that the defendants had come up with contradictory stories regarding the car's ownership. Thus, we cannot be sure that the officers did not subjectively believe that they had probable cause to arrest the defendants on the highway.

Our conclusion would not be disturbed even if the evidence clearly showed that the officers subjectively believed that they did not have probable cause to arrest because the subjective belief of the arresting officer is irrelevant in determining whether probable cause exists. As previously noted, probable cause is determined by an objective examination of all of the circumstances known to the officers. Just as a subjective belief by the arresting officer would not establish probable cause where none existed, a subjective belief by the arresting officer cannot destroy probable cause where it exists. "[T]he fact that the officers did not believe there was probable cause and proceeded on a consensual or *Terry*-stop rationale would not foreclose the State from justifying Royer's custody by proving probable cause...." *Florida v. Royer*, 460 U.S. 491, 507, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1982). *Accord United States v. Moses*, 796 F.2d 281, 284–85 (9th Cir.1986); *United States v. Roy*, 869 F.2d 1427, 1432–33 (11th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 72, 107 L.Ed.2d 38 (1989).

Nor is our conclusion disturbed by the fact that the officers were not aware that the defendants had committed any particular burglary. "[T]here is probable cause if a 'succession of superficially innocent events had proceeded to the point where a prudent man could say to himself that an innocent course of conduct was less likely than a criminal one.'" 1 W. LaFave, *Search and Seizure*, § 3.2(e) at 595 (citations omitted). The Second Circuit has held that an officer who has probable cause that the defendant has committed a crime need not know precisely what crime the defendant committed. *United States ex rel. Frasier v. Henderson*, 464 F.2d 260, 262–63 (2d Cir.1972). In this case, the officers had probable cause to believe that the goods were stolen, but could not know whether the defendants were burglars, in possession of stolen property, or perpetrators of other crimes relating to the goods. Accordingly, we agree with LaFave and the Second Circuit that knowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed by the defendants.

V

For the forgoing reasons, we AFFIRM the district court's denial of the defendants' motions to suppress the firearms.

We AFFIRM Anderson's conviction and his enhanced sentence under § 924(e).