Edward I. SOLTESZ, Plaintiff–
Appellant,

v.

CITY OF SANDUSKY, Robert Runner,
individually and in his official capaci-
ty as Chief of Police, and Ken Gauts-
chi, individually and in his official
capacity as a police officer of the City
of Sandusky, Defendants–Appellees.

No. 01–3444.

United States Court of Appeals,
Sixth Circuit.

Oct. 15, 2002.

Before DAUGHTREY, GILMAN, and GIBSON,* Circuit Judges.

PER CURIAM.

The plaintiff, Edward Soltesz, filed this civil rights action pursuant to 42 U.S.C. § 1983, contending that he was arrested by law enforcement officials of the City of Sandusky without probable cause and in derogation of his right to due process. The district court found that there was no genuine issue of material fact and ruled as a matter of law that the defendants were not liable under § 1983. We find no error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The record reflects that Soltesz was an elderly dentist in Sandusky, Ohio, when he agreed to allow Joseph Loken to stay at his home in exchange for Loken's promise to assist the plaintiff in moving various office equipment and in performing certain household chores. Soltesz apparently became dissatisfied with the arrangement, however, and directed Loken to gather his belongings and leave the residence. When Loken did not immediately comply, the plaintiff threatened to "throw [him] out that door head first." Eventually, Loken told Soltesz that he (Loken) had summoned the police to protect himself in the situation, a revelation that provoked Soltesz to rise from his chair, clench his fists, and then sit down again.

* The Hon. John R. Gibson, United States Court of Appeals for the Eighth Circuit, sitting by designation.

When four uniformed police officers arrived at the plaintiff's home, Soltesz admittedly "invited [them] to enter [his] living room." While some of the officers conversed with the plaintiff, others located Loken in the basement of the dwelling and questioned him about his request for police assistance. At the conclusion of those conversations, Loken indicated that he still wished to file charges against Soltesz and signed a domestic violence statement. As a result, the plaintiff was arrested by Officer Kenneth Gautschi, a newly-commissioned member of the local police, on a charge of threatening domestic violence, was handcuffed, and was escorted to a holding cell at the police station.

Loken lodged a formal complaint with the police, although the charge was dismissed when the complaining witness could not be located at the time the matter came to trial. Soltesz then filed suit in federal court, alleging that he was arrested without probable cause, that he was deprived of his liberty and property without due process, that the City of Sandusky and Police Chief Robert Runner negligently trained and supervised Officer Gautschi in the procedures for charging individuals with domestic violence, and that the city and the police chief had a policy, custom, or practice of training officers in such a manner as to violate constitutional principles.

At the conclusion of the discovery process, the district court granted summary judgment to the defendants on the three federal claims and dismissed, without prejudice, an additional state claim of negligence. In so ruling, the court recognized that Officer Gautschi had no probable cause to arrest Soltesz for domestic violence, but held nevertheless that he did have probable cause to effect an arrest for the state crime of menacing. Moreover, the court noted that because the require-ment that misdemeanor arrests be made only in situations in which the offense was committed in the officer's presence is a state statutory requirement, violation of that precept in this case would not give rise to a federal constitutional cause of action under § 1983. Soltesz's subsequent motion for reconsideration was denied in a written order emphasizing that the police officers' warrantless entry into the plaintiff's home was justified by the homeowner's consent. This appeal ensued.

## DISCUSSION

### 1. The Standard of Review

We review *de novo* the grant of summary judgment by a district court. *See Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir.2001), *cert. denied*, —— U.S. ——, 123 S.Ct. 73, —— L.Ed.2d —— (2002). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). No genuine issue of material fact exists "unless a reasonable jury could return a verdict for the nonmoving party." *Preferred Props., Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 801 (6th Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 2663, 153 L.Ed.2d 838 (2002) (quoting *Cockrel*, 270 F.3d at 1048). Moreover, "[i]n reviewing a grant of summary judgment, we view the evidence in the light most favorable to the nonmoving party." *Id.*

### 2. The Probable Cause Claim

On appeal, Soltesz first asserts that the police had no probable cause to arrest him for domestic violence or for menacing because: (a) the plaintiff and Loken did not share any of the types of relationships that

the Ohio domestic violence statutes seek to protect; (b) the arresting officers, at the time of the arrest, never contemplated charging Soltesz with menacing; (c) Ohio law prohibits a warrantless arrest for a misdemeanor like menacing unless the offense is committed in the presence of the officer; and (d) Soltesz's affidavit claims that there was no conversation between Loken and the police prior to the arrest, thus negating the possibility that the officers had sufficient knowledge to have probable cause to arrest the plaintiff at that time. Although there may indeed be merit to some of these allegations, the relevant legal analysis to be undertaken supports the decision of the district judge that the plaintiff has raised no genuine issue of material fact disputing the existence of probable cause for the arrest.

By now, the legal principle is well-established that law enforcement officials "may arrest a person without a warrant if they have probable cause at the time of the arrest to believe that the person has committed or is committing a crime." *United States v. Caicedo,* 85 F.3d 1184, 1192 (6th Cir.1996) (citing *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). Although "probable cause" "is largely an 'assessment of probabilities,'" *id.* (quoting *Illinois v. Gates,* 462 U.S. 213, 234, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)), the standard is still interpreted to be "more stringent than reasonable suspicion." *Id.* (citing *United States v. Braggs,* 23 F.3d 1047, 1049 (6th Cir.1994)).

■ In this matter, as noted by the district court in its initial ruling, the arresting officers did not have probable cause to arrest Soltesz for an Ohio domestic violence offense. Section 2919.25(C) of the Ohio Revised Code, the applicable state domestic violence provision, states that "[n]o person, by threat of force, shall knowingly cause a *family or household*

*member* to believe that the offender will cause imminent physical harm to the family or household member." (Emphasis added.) Furthermore, the phrase "family or household member" is itself explicitly defined in the statute to mean any of the following:

(a) Any of the following who is residing or has resided with the offender:

(i) A spouse, a person living as a spouse, or a former spouse of the offender;

(ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender;

(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.

(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

O.R.C. § 2919.25(E)(1).

■ At the time Soltesz was arrested, the officers at the scene were aware that Joseph Loken did not fit within any of the domestic violence statute's categories of protected individuals. The defendants did argue in the district court that the concept of "affinity" as used in § 2919.25(E)(1)(a)(ii) connotes only "companionship" or "acquaintance" and, therefore, that Loken was related by affinity to Soltesz. The district court, however, appropriately recognized that the Ohio courts have consistently defined "affinity" as "the relationship which arises by marriage between one of the parties and the blood relations of the other" or as "relationship by marriage." *See Chinn v. State,* 47 Ohio St. 575, 26 N.E. 986, 987 (1890); *State v. Peine,* No. 8–202, 1982 WL 5837 at *1 (Ohio Ct.App. Mar. 1, 1982). Indeed, to

accord the term the broad meaning advocated by the defendants would turn any assault within a home into a domestic violence prosecution, unless the victim was both in the residence and unknown to the offender. Such a strained interpretation is not only unfaithful to the language of the statutory provision, but also trivializes the real harm sought to be addressed in the criminal code by Ohio's state legislature. At the time of the arrest, therefore, the police had no probable cause to believe that the plaintiff had violated the provisions of the domestic violence statute.

Although finding that the police officers had no probable cause to arrest Soltesz for threatening domestic violence, the district judge properly concluded that the officers had probable cause for Fourth Amendment purposes to detain the plaintiff on charges of menacing. The prohibition on menacing directs that "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." O.R.C. § 2903.22(A). The facts of this case clearly justify an arrest of the plaintiff under that statute, and the fact that the police did not themselves contemplate a charge of menacing when arresting Soltesz does not so extinguish the probable cause for such an action that a Fourth Amendment violation results. Indeed, as we explained in *United States v. Anderson,* 923 F.2d 450, 457 (6th Cir.1991), "probable cause is determined by an *objective* examination of all of the circumstances known to the officers." (Emphasis added.) Thus, "a subjective belief by the arresting officer cannot destroy probable cause where it exists." *Id.*

Switching course, the plaintiff next submits that, even if the arrest for menacing would be legitimate in some instances,

it is not so here because, under Ohio law, law enforcement officials may make warrantless arrests for misdemeanors (like menacing) only if the offense was committed in the presence of the arresting officer. Because all allegedly illegal acts in this case occurred prior to the arrival of the police at Soltesz's home, argues the plaintiff, the warrantless arrest was improper.

The warrantless arrest in this case may well have been improper *under principles of Ohio statutory law.* The plaintiff's claims in this proceeding, however, are based solely upon 42 U.S.C. § 1983 and upon the Fourth and Fifth Amendments to the United States Constitution. Because the United States Supreme Court "has never held that a warrant for lesser offenses occurring out of the presence of an officer is constitutionally required," Soltesz's assertion is not grounded in federal constitutional jurisprudence and, therefore, does not raise a claim cognizable under § 1983. *See* 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 5.1(b) (2d ed.1987); *see also Lewellen v. Metro. Gov't of Nashville and Davidson County,* 34 F.3d 345, 347 (6th Cir.1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate."). Consequently, Soltesz has also failed to raise a genuine issue of material fact that would call into question the propriety of the district court's summary judgment decision.

Soltesz's final challenge to the determination that the defendants had probable cause to arrest the plaintiff involves a contention that the police could not have accurately assessed the situation presented to them because "there was no communication between the officers and Loken." In his affidavit filed with the district court,

the plaintiff did state, "I did not see the officer talk to Mr. Loken and did not hear any conversation between him and the officer. In fact, I did not see Mr. Loken and any off[ic]er go to the basement at any time while this matter was discussed with the police." The plaintiff's statements that he did not *see* the police converse with Loken are not, however, synonymous with a factual assertion that such discussions did not take place. In light of the affidavit of defendant Gautschi stating that both he and Officer Wichman spoke with Loken at Soltesz's house and the written complaint filled out by Loken at the scene, it is clear that a conversation with the complaining witness occurred and that such information established probable cause that the plaintiff had menaced Loken. Soltesz's challenge to the district court's probable cause determination on this ground is, therefore, also without merit.

### 3. The Illegal Entry Claim

The plaintiff next asserts that the warrantless entry of the police into his home violated established principles of Fourth Amendment jurisprudence because no exigent circumstances were present in this instance. Warrantless entries into homes by law enforcement officials are indeed presumptively unconstitutional. *See Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). An exception to the warrant requirement exists, however, in situations in which valid consent to search or to enter has been granted to the police. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

■ Here, Soltesz readily concedes that he actually invited the police into his home; nevertheless, he maintains that a constitutional violation occurred because those officers exceeded the scope of that consent by arresting him for domestic violence. The

very justification for the arrival of the police at the plaintiff's home was to investigate a telephoned claim of domestic violence. Upon being voluntarily admitted into the home, therefore, the police were justified in interviewing the participants in the alleged dispute and in taking such further actions as were called for in the situation. The plaintiff has raised no genuine issue of fact in this regard that would call into question the propriety of the district court's grant of summary judgment to the defendants in this matter.

### 4. The Due Process Claim

■ Soltesz also insists that the district court erred in granting summary judgment to the defendants without discussing the plaintiff's claim that the police actions also violated Soltesz's due process rights. The plaintiff seems to concede that "the Supreme Court has repeatedly emphasized that substantive due process is not to be used as a fallback constitutional provision when another provision or amendment (in this case, the [Fourth] Amendment) directly addresses the subject." *Boroff v. Van Wert City Bd. of Educ.*, 220 F.3d 465, 471 (6th Cir.2000), *cert. denied*, 532 U.S. 920, 121 S.Ct. 1355, 149 L.Ed.2d 286 (2001) (citing *Conn v. Gabbert*, 526 U.S. 286, 293, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)). He now argues, however, that the right he claims to have been violated is also a *procedural* due process right—the "right to be heard before a neutral magistrate for the issuance of a warrant for a misdemeanor charge outside the presence of an officer." Nevertheless, Soltesz's denomination of the right as a procedural one does not make it so. In fact, the plaintiff's claim, no matter how couched, is simply that he was improperly subjected to a warrantless arrest, a claim that implicates the very substance of the Fourth Amendment. The district court, therefore, did not err in granting summary judgment to

the defendants without further discussion of the plaintiff's due process claim.

### 5. The "Customs and Policies" Claim

In his reply brief, Soltesz alleges for the first time in this appeal that the district court also erred in dismissing his claims against the city and the police chief based upon the defendants' maintenance of unconstitutional customs and policies. We have consistently held, however, "that 'the appellant cannot raise new issues in a reply brief; he can only respond to arguments raised for first time in appellee's brief.'" *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir.2002) (quoting *United States v. Crozier* 259 F.3d 503, 517 (6th Cir.2001), *cert. denied*, 534 U.S. 1149, 122 S.Ct. 1111, 151 L.Ed.2d 1005 (2002), and *United States v. Jerkins*, 871 F.2d 598, 602 n. 3 (6th Cir.1989)). We therefore decline to review this matter.

### CONCLUSION

Even though, in retrospect, the City of Sandusky police officers improperly arrested Edward Soltesz for a domestic violence offense, those officers, at the time of the arrest, possessed probable cause to detain the plaintiff for the state offense of menacing. The arrest of Soltesz did not, therefore, contravene established Fourth Amendment principles so as to raise any valid federal constitutional claim against the defendants. Because the plaintiff cannot establish that the defendants violated any of Soltesz's federal constitutional rights protected by § 1983. The district court did not err in granting summary judgment to the defendants and dismissing the federal law claims asserted by the plaintiff in this matter. We therefore affirm the judgment of the district court in all respects.