OPINION
{¶ 1} Plaintiff-appellant, John Frazier, appeals the decision of the Clinton County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Clinton County Sheriff's Office, Sergeant Scott Stanfill, and Deputy John Bailey. We affirm the trial court's decision. *Page 2 
 {¶ 2} The undisputed facts are taken from appellant's deposition conducted on June 6, 2007.
 {¶ 3} Appellant lived in a two-bedroom mobile home with his girlfriend, Julie Martin. In August 2005, Julie's daughter and son-in-law, Rebecca Martin and Jerry Harner, along with Rebecca's three children, also moved into appellant's mobile home. Shortly after their arrival, tempers flared and a physical altercation ensued, which ultimately led to this appeal.
 {¶ 4} On August 17, 2005, Julie told appellant that she was moving out of the mobile home because she could no longer tolerate the "belligerent" and unruly behavior of one of her grandchildren. Appellant, in an effort to dissuade Julie from leaving, ordered Rebecca, Jerry, and her three children to move out. They refused to leave, however, and instead told appellant that he would "have to call the law." As per their request, appellant called the Clinton County Sherriff's Office to remove the "unwanted" guests from his property. After the police were called, Jerry left the mobile home to purchase alcohol. Sometime later, Sergeant Stanfill arrived at appellant's home, but left shortly after he determined there were no issues to pursue at that time.
 {¶ 5} Jerry, upon returning to the mobile home empty handed, called appellant "a law-calling mother f * * *," after being told the police were called. In response, appellant again asked Jerry to get his belongings and to get his family off of the property. However, Jerry refused to leave, and instead, threatened to harm appellant, his neighbors, and his cats. The situation became even more volatile after Jerry took off his shirt and stated; "Let's dance, let's dance, let's dance."
 {¶ 6} At this point, although it is unclear who actually initiated the physical altercation, a melee ensued which resulted in a head-butt, pushing, shoving, as well as numerous punches being thrown. The brawl ultimately culminated with appellant throwing his barbeque grill at Jerry, missing him, and striking his unsuspecting neighbor in the back. Once the *Page 3 
charcoal dust cleared, appellant ran to his neighbor's house where he called the Clinton County Sheriff's Office.
 {¶ 7} A short time later, Sergeant Stanfill and Deputy Bailey were dispatched to the mobile home. Their subsequent investigation led to numerous witness statements identifying appellant as the aggressor, and Jerry as his son-in-law. Based on this information, Sergeant Stanfill and Deputy Bailey arrested appellant for domestic violence. However, it was later determined that appellant and Jerry were not related and an amended complaint was drafted charging appellant with assault.
 {¶ 8} On January 21, 2006, a Clinton County Municipal Court jury acquitted appellant on the assault charge. After being acquitted, appellant filed suit against the Clinton County Sheriff's Office, Sergeant Stanfill, and Officer Bailey (collectively "defendants") alleging malicious prosecution, false arrest, and false imprisonment. The defendants filed a motion for summary judgment, which the trial court granted. Appellant now appeals, raising one assignment of error.
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "THE TRIAL COURT ERRED IN GRANTING APPELLEES [sic] SUMMARY JUDGMENT ON APPELLANT'S CLAIMS OF MALICIOUS PROSECUTION, FALSE ARREST AND WRONGFUL IMPRISONMENT BECAUSE THERE WERE GENUINE ISSUES OF MATERIAL FACTS. APPELLEES WERE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE FROM THE EVIDENCE REASONABLE MINDS COULD COME TO DIFFERENT CONCLUSIONS."
 {¶ 11} Appellant argues that the trial court erred in granting defendants' motion for summary judgment because "[o]bviously, there are numerous issues of material fact." We disagree.
 {¶ 12} This court conducts a de novo review of a trial court's decision on summary *Page 4 
judgment, which means that "we apply the standards used by the trial court". Fink v. J-II Homes, Inc., Butler App. No. CA2005-01-021, 2006-Ohio-3083, ¶ 14, quoting Brinkman v. Doughty (2000),140 Ohio App.3d 494, 496. A trial court may grant summary judgment only when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence submitted that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. Civ. R. 56(C);Welco Indus., Inc. v. Applied Cos., 67 Ohio St.3d 344, 346,1993-Ohio-191. The movant bears the initial burden of informing the trial court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. Dresher v. Burt, 75 Ohio St.3d 280,293, 1996-Ohio-107. Once this burden is met, the nonmovant has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Id.
 Probable Cause Malicious Prosecution {¶ 13} Initially, in regards to his malicious prosecution claim, appellant argues that the trial court erred in granting defendants' motion for summary judgment due to "serious doubt whether there was probable cause for [a]ppellant's prosecution." Specifically, appellant asserts that the trial court erred in granting defendants' summary judgment because (1) there were conflicting witness statements about who instigated the fight, and, because (2) he claimed self-defense at the time of his arrest. These arguments lack merit.
 {¶ 14} To prevail on a malicious prosecution claim, a plaintiff must prove (1) malice in initiating or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. Barnes v. Meijer Dept. Store, Butler App. No. CA2003-09-246, 2004-Ohio-1716, ¶ 13, citing Trussell v. General MotorsCorp. (1990), 53 Ohio St.3d 142, syllabus. The "gist" of any action for malicious prosecution is lack of probable cause. *Page 5 Barnes at ¶ 13. If the plaintiff cannot show lack of probable cause, the claim for malicious prosecution fails as a matter of law. Davis v.Peterson (Mar. 29, 1995), Summit App. No. 16883, 1995 WL 134796, at *3.
 {¶ 15} Probable cause exists when the officer has sufficient information, derived from his own knowledge or a trustworthy source, which would lead a prudent person to believe the accused committed a criminal offense. State v. Cearley, Butler App. No. CA2003-08-213,2004-Ohio-4837, ¶ 8. In turn, "knowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed." United States v.Anderson (C.A.6, 1991), 923 F.2d 450, 457. In fact, whether the accused actually committed a crime is not pertinent to a probable cause determination. Barnes at ¶ 13. A court reviews the totality of facts and circumstances surrounding the arrest in order to determine whether probable cause exists. State v. Gagaris, Butler App. No. CA2007-06-142,2008-Ohio-5418, ¶ 13.
 {¶ 16} Appellant was initially arrested for domestic violence pursuant to R.C. 2919.25(A), which prohibits "knowingly caus[ing] or attempting] to cause physical harm to a family or household member." Under R.C. 2919.25(F)(1)(a)(ii), a person is a "family or household member" if the person is "residing or has resided with the offender," and is "related by consanguinity or affinity to the offender."
 {¶ 17} Appellant claims that his arrest could not be based on probable cause because it was "based largely on statements of * * * two persons under the influence of alcohol at the time they gave their statements." However, the record provides ample evidence to support defendants' claim that Sergeant Stanfill and Deputy Bailey, the arresting officers, had probable cause to arrest appellant for domestic violence. During their investigation, Sergeant Stanfill and Deputy Bailey took numerous statements from eye witnesses indicating that appellant was the aggressor who initiated the fight with Jerry. Further, appellant's neighbor, *Page 6 
Angela Bowling, provided a written statement to the police that identified Jerry as appellant's son-in-law. In fact, appellant even admitted that he hit Jerry and that Jerry resided at his home.[1] The trial court, in granting defendants' motion for summary judgment, determined that the officers' finding of probable cause to arrest appellant was not negated due to "some of the witnesses' possible intoxication" "[g]iven the extent of the investigation, including the number of witnesses, and physical evidence." We find no error in this conclusion.
 {¶ 18} Further, appellant also claims that the trial court erred in granting defendants' motion for summary judgment because "his statements to the police at the time of his arrest, that he had acted in self defense[,] was sufficient to show genuine issues of material fact." We disagree.
 {¶ 19} Here, because an affirmative defense is factual in nature, "arresting officers would [be] derelict in their duty if they refused to institute proceedings based on their personal belief that the defense may create a reasonable doubt as to appellant's guilt." See Skerritt v.Olm (Apr. 27, 1978), Cuyahoga App. No. 37112, 1978 WL 217858 (finding a determination of the application of an affirmative defense was properly left to the trier of the fact); see, also, Weible v. Akron (May 8, 1991) Summit App. No. 14878, 1991 WL 77187 (finding a "police officer is not required to weigh and evaluate the truth of alleged affirmative defenses to a crime before he may act upon probable cause to arrest and charge a defendant"). To "require every police officer, before instituting criminal proceedings, to verify or contradict every affirmative defense claimed by each person he arrests * * * would be quite unsound."Skerritt, 1978 WL 217858, at *1. As a result, and based on the totality of the circumstances, Sergeant Stanfill and Deputy Bailey reasonably believed that appellant committed the offense of domestic violence even though appellant claimed self-defense at the time of his arrest. *Page 7 
Therefore, Sergeant Stanfill and Deputy Bailey had probable cause to arrest appellant.
 {¶ 20} Accordingly, based on the foregoing, the trial court did not err in granting defendants' motion for summary judgment on appellant's claims of malicious prosecution.
 False Arrest and False Imprisonment {¶ 21} Next, in regards to his claims of false arrest and false imprisonment, appellant argues that "there are obviously genuine issues of material facts" because (1) he "was not even charged with the crime for which he was arrested," and (2) he "was acquitted on the assaultcharges in the municipal court by a jury only after (30) minutes ofdeliberation." (Emphasis sic.) These arguments lack merit.
 {¶ 22} The claims of false arrest and false imprisonment require proof of the same essential elements, and therefore, are "indistinguishable."Barnes, 2004-Ohio-1716, at ¶ 15; Rogers v. Barbera (1960),170 Ohio St. 241, 243. Claims of false arrest and false imprisonment are made by showing (1) the intentional detention of the person, and (2) the unlawfulness of the detention. See Niessel v. Meijer, Inc., Warren App. No. CA2001-04-027, 2001-Ohio-8645. To establish a claim for false imprisonment, one must prove by a preponderance of the evidence that he was intentionally detained or confined without lawful privilege and against his consent. Id. False imprisonment is not concerned with good or bad faith or malicious motive. Barnes at ¶ 15, citingRogers. Therefore, because an arrest based on probable cause is a lawful detention, a finding of probable cause serves to defeat false arrest and false imprisonment claims. Radvansky v. City of Olmstead Falls (C.A.6, 2005), 395 F.3d 291, 315.
 {¶ 23} Appellant first argues that genuine issues of material fact exist because he "was not even charged with the crime for which he was arrested." However, the fact that appellant was ultimately tried on an assault charge does not negate the fact that the arresting officers had probable cause to arrest him for domestic violence. In this case, the officers arrested *Page 8 
appellant and charged him with domestic violence based on their mistaken belief that Jerry was appellant's son-in-law who was residing with him at the time of the altercation. This mistaken belief was based on a written statement provided by Angela Bowling, appellant's neighbor, which identified Jerry as appellant's son-in-law, and on appellant's own admission at the time of his arrest that Jerry lived with him.
 {¶ 24} Further, as stated previously, "knowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed."Anderson, 923 F.2d at 457. As a result, even if we were to find that the arresting officers did not have probable cause to arrest appellant for domestic violence, they still had probable cause to arrest appellant for assault pursuant to R.C. 2903.13(A), which prohibits "knowingly caus[ing] or attempting] to cause physical harm to another * * *."
 {¶ 25} Appellant also argues that a genuine issue of material fact exists because he was acquitted by a jury after only 30 minutes of deliberation. However, we fail to see how the length of jury deliberation relates in any way, material or otherwise, to whether Sergeant Stanfill and Deputy Bailey had sufficient probable cause to arrest appellant on August 17, 2005. Accordingly, we find that the trial court did not err by granting summary judgment in favor of defendants with regard to appellant's claims for malicious prosecution, false arrest, and false imprisonment.
 Statutory Immunity {¶ 26} Appellant also argues that the trial court erred in finding that defendants were entitled to statutory immunity under R.C. Chapter 2744. Specifically, appellant claims that "[o]nce there is an issue of false arrest, wrongful imprisonment and malicious prosecution, there is an issue as to whether [defendants] are entitled to immunity." This argument lacks merit.
 {¶ 27} The determination of whether immunity is available is a question of law that is *Page 9 
properly decided by the court before trial. Carpenter v.Scherer-Mountain Ins. Agency (1999), 135 Ohio App.3d 316, 330. Accordingly, we review de novo a trial court's summary judgment decision on immunity grounds. Id.
 Political Subdivision Immunity: Clinton County Sheriff's Office {¶ 28} The Ohio Revised Code establishes a three-tier analysis for determining whether a political subdivision is immune from liability.Carter v. Cleveland, 83 Ohio St.3d 24, 28, 1998-Ohio-421. First, R.C. 2744.02(A)(1) sets forth the general rule that a political subdivision is immune from liability for acts or omissions connected with governmental or proprietary functions. See Colbert v. Cleveland,99 Ohio St.3d 215, 216, 2003-Ohio-3319. Second, R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1). See Ryll v. Columbus Fireworks Display Co.,Inc., 95 Ohio St.3d 467, 470, 2002-Ohio-2584. Finally, R.C. 2744.03(A) makes available further defenses and immunities that a political subdivision may assert if it is subject to liability under R.C. 2744.02(B). See Colbert.
 {¶ 29} A sheriff's office is a political subdivision as defined by R.C. 2744.01(F). Jones v. Franklin County Sheriff's Dept. (June 21, 1999), Butler App. No. CA99-01-004, at 7-8; Barstow v. Waller, Hocking App. No. 04CA5, 2004-Ohio-5746, ¶ 30. As a result, the Clinton County Sheriff's Office is a political subdivision. In addition, the provision of police services and enforcement of the laws are governmental functions. See R.C. 2744.01(C)(2)(a) and (i); Barstow at ¶ 30. Therefore, the Clinton County Sheriff's Office is entitled to immunity unless one of the exceptions in R.C. 2744.02(B) applies.
 {¶ 30} In this case, our review of R.C. 2744.02(B) indicates that the only possible exception that may apply is R.C. 2744.02(B)(5), which states:
 {¶ 31} "[A] political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the *Page 10 
Revised Code, including, but not limited to, sections 2743.02 and5591.37 of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term `shall' in a provision pertaining to a political subdivision."
 {¶ 32} However, in order for this section to apply appellants must be able to point to a statute that expressly imposes liability on political subdivisions for actions similar to those at issue here.Barstow, 2008-Ohio-5746 at ¶ 31, citing Ratcliff v. Darby, Scioto App. No. 02CA2832, 2002-Ohio-6626, ¶ 17. In this case, appellant failed to bring any such statute to our attention, and our research has not revealed any statute imposing civil liability on political subdivisions for actions similar to those taken by Sergeant Stanfill and Deputy Bailey. See, e.g., Barstow (finding the Logan Police Department immune from liability for a claim of false arrest and malicious prosecution under R.C. 2744.02(A)(1) where officer merely arrested the accused after alleged victim reported being raped).
 {¶ 33} In turn, we conclude the Clinton County Sheriff's Office is immune from liability under R.C. 2744.02(A)(1). As a result, the trial court properly granted summary judgment in its favor.
 Political Subdivision Employee Immunity: Sergeant Stanfill and Deputy Bailey {¶ 34} R.C. 2744.03(A)(6) provides qualified immunity to employees of political subdivisions unless one of the following applies: "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. * * *." *Page 11 
 {¶ 35} The Ohio Revised Code does not expressly impose liability on police officers for false arrest. Barstow at ¶ 33. Moreover, Sergeant Stanfill and Deputy Bailey were acting within their scope of employment as police officers when they arrested appellant. Id. Therefore, Sergeant Stanfill and Deputy Bailey are immune from liability unless appellant can show that they acted maliciously, in bad faith, or in a wanton or reckless manner. Brewer v. Butler Cty. Bldg. Zoning Dept. (2001),142 Ohio App.3d 567, 575, citing Irving v. Austin (2000),138 Ohio App.3d 552, 556.
 {¶ 36} "Malice" is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified. Jackson v. Butler Cty. Bd. ofCommrs. (1991), 76 Ohio App.3d 448, 453-454; Cook v. Cincinnati (1995),103 Ohio App.3d 80, 90. "Bad faith" involves a dishonest purpose, conscious wrongdoing, intent to mislead or deceive, or the breach of a known duty through some ulterior motive or ill will. Jackson; Cook.
"Wanton" misconduct is the failure to exercise any care whatsoever.Fabrey v. McDonald Village Police Dept., 70 Ohio St.3d 351, 353,1994-Ohio-368. Finally, "reckless" misconduct refers to misconduct that causes an unreasonable risk of harm and is "substantially greater than that which is necessary to make [the] conduct negligent." Thompson v.McNeil (1990), 53 Ohio St.3d 102, 104-105.
 {¶ 37} Despite appellant's allegations that "by the very nature of these charges, there is an element of wantonness or recklessness," appellant has failed to point to any specific evidence that the arresting officers acted with malice, bad faith, or in a wanton or reckless manner. As the trial court noted, Sergeant Stanfill and Deputy Bailey were acting within the "scope of employment, in good faith and not in a reckless or wanton manner." We find no error in this conclusion. As a result, because appellant failed to introduce any evidence that would give rise to a genuine issue of material fact regarding their liability, the trial court properly concluded that appellant could not impose civil liability upon Sergeant Stanfill and *Page 12 
Deputy Bailey.
 {¶ 38} In light of the foregoing, we find that the trial court did not err in granting summary judgment in favor of defendants with regard to appellant's claims of malicious prosecution, false arrest and false imprisonment, and in finding the defendants were immune from liability under R.C. Chapter 2744. Accordingly, appellant's sole assignment of error is overruled.
 {¶ 39} Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.
[1] Appellant now claims that Jerry was "unwelcome and unwanted" during his two-week stay in appellant's home and that he made a mistake in filling out his written statement. *Page 1