NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0353n.06

No. 23-5428

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 12, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) ) ) | |
| TROY D. HUFF, | ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: SILER, CLAY, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

At the scene of a controlled drug buy, police searched Defendant Troy Huff's truck without a warrant and found drugs and a gun. Huff moved to suppress that evidence, arguing a lack of probable cause for the search. The district court denied Huff's motion, concluding that the totality of the circumstances—including two tips from known informants, Facebook messages from Huff setting up the proposed drug sale, and Huff's arrival at the agreed-upon location for the drug sale—established probable cause. We agree and affirm.

I.

In July 2021, an incarcerated informant told Lake Cumberland Area Drug Task Force Director Wayne Conn that Huff was selling large amounts of methamphetamine and other illegal drugs. She also reported that Huff often drove rented vehicles and kept his drugs in a safe within the car.

Two months later, a paid confidential informant told Wayne County Sheriff's Deputy Derek Dennis that Huff was dealing drugs and that he wanted to sell her an ounce of methamphetamine. The confidential informant had a reliable track record—she previously had provided accurate information leading to criminal convictions and drug seizures, and she had made undercover drug buys for law enforcement. So Director Conn and Deputy Dennis decided to set up a "buy-bust" operation. They asked the confidential informant to arrange the purchase of methamphetamine from Huff.

Using Facebook Messenger, the confidential informant communicated with Huff and came to an agreement: he would sell her an ounce of methamphetamine in the parking lot of Hicks Grocery. Huff stated he would arrive in a white Hyundai. The confidential informant contemporaneously relayed the conversation to Deputy Dennis, sending him text messages about and screenshots of her communications with Huff. Because Huff's Facebook account was in his own name, the screenshots showed that the conversation was with "Troy," and Huff's picture accompanied his messages.

After arriving at Hicks Grocery, the confidential informant waited for Huff while Director Conn surveilled the parking lot in an unmarked car. From his vantage point, Director Conn could see any vehicles entering or exiting the parking lot, and he had a copy of Huff's driver's license with him to identify Huff. Deputy Dennis waited close by in another vehicle with his K-9, Dunya.

Huff arrived when expected, though he was driving a gray pickup truck instead of a white Hyundai. As anticipated, he parked alongside the confidential informant's car, positioning his truck so that the driver's side windows were next to one another. Director Conn testified that, in his law-enforcement experience, he had "seen several drug transactions take place with the cars in that" otherwise unusual position.

Recognizing Huff, Director Conn pulled his unmarked car behind Huff's truck and activated his emergency lights. Both Director Conn and Huff exited their vehicles as Deputy Dennis approached and began speaking with Huff. Huff told Deputy Dennis that he did not know the driver of the car next to which he had just parked and explained that the truck he was driving was a rental.

Huff declined to consent to a search, so Deputy Dennis deployed Dunya to sniff around Huff's truck. Dunya alerted at the driver's side door, and Deputy Dennis then searched the truck. Inside, he found illegal drugs and a loaded gun.

After Huff was charged with drug and gun offenses, he moved to suppress the evidence recovered from the search and "the fruits thereof" (including incriminating statements he made at the scene). The district court denied Huff's motion following an evidentiary hearing. Huff then conditionally pled guilty to possessing with intent to distribute controlled substances (in violation of 21 U.S.C. § 841(a)(1)) and possessing a firearm in furtherance of a drug-trafficking offense (in violation of 18 U.S.C. § 924(c)(1)(A)), preserving his right to appeal the denial of his suppression motion. The district court sentenced him to 300 months in prison. This appeal followed.

II.

When reviewing the denial of a suppression motion, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Pruitt*, 458 F.3d 477, 480 (6th Cir. 2006). The existence of probable cause is a legal conclusion reviewed de novo. *United States v. Diaz*, 25 F.3d 392, 394 (6th Cir. 1994). We may affirm on any basis supported by the record, *United States v. Hardin*, 539 F.3d 404, 417 (6th Cir. 2008), and we must view the evidence "in the light most likely to support the district court's decision," *Pruitt*, 458 F.3d at 480 (citation omitted).

The Fourth Amendment protects "against unreasonable searches and seizures" by police. U.S. Const. amend. IV. Its protection extends to searches of vehicles. *United States v. Brooks*, 987 F.3d 593, 599 (6th Cir. 2021). Generally, for a search to be reasonable, police must have obtained a judicial warrant authorizing it. *California v. Carney*, 471 U.S. 386, 390 (1985). Without a warrant, "a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 573 U.S. 373, 382 (2014). One such exception—the automobile exception—allows officers to search a car and containers within it if they have probable cause to believe that each contains evidence of a crime. *California v. Acevedo*, 500 U.S. 565, 580 (1991); *United States v. Graham*, 275 F.3d 490, 509–10 (6th Cir. 2001).

An officer has probable cause when there is a "fair probability" that evidence of a crime will be found in the place to be searched based on the totality of the circumstances. *Florida v. Harris*, 568 U.S. 237, 244 (2013) (citation omitted). This is a "flexible," "practical," and "common-sensical" standard, focused on assessing "probabilities in particular factual contexts." *Id.* To determine whether probable cause exists, we examine the "objective facts known to the officers at the time of the search." *United States v. Smith*, 510 F.3d 641, 648 (6th Cir. 2007) (citation omitted). We analyze those facts from the objective perspective of a reasonable police officer, *see United States v. Ferguson*, 8 F.3d 385, 391–92 (6th Cir. 1993), but we also recognize the relevance of officers' "experience and specialized training" that may help them draw conclusions from "the cumulative information available to them," *United States v. Shank*, 543 F.3d 309, 315 (6th Cir. 2008) (citation omitted).

Among the sources of information that can support probable cause are tips police receive from informants. Tips "come in many shapes and sizes" and "may vary greatly in their value and reliability." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Thus, as we do with the probable-cause

inquiry generally, we apply a totality-of-the-circumstances approach to determine whether a tip was reliable enough to support probable cause. *Id.* at 238–39.

Tips from known informants are "entitled to far greater weight than those of an anonymous source" because known informants are subject to prosecution if they provide false information. *United States v. May*, 399 F.3d 817, 824–25 (6th Cir. 2005). And information from sources who have provided reliable information in the past counts "appreciably more" than information from an informant whose reliability is untested. *United States v. Stokes*, 742 F. App'x 947, 951 (6th Cir. 2018); *see also United States v. Martin*, 526 F.3d 926, 937 (6th Cir. 2008). Thus, when it comes to tips bearing such "hallmarks of reliability," less independent corroboration is needed to establish probable cause. *See Stokes*, 742 F. App'x at 952; *see also United States v. Dyer*, 580 F.3d 386, 392 (6th Cir. 2009)).

Here, the foundation for probable cause began to form two months before the buy-bust operation, when the known, incarcerated informant told Director Conn about Huff's methamphetamine dealing. The information she provided was detailed and specific, noting that Huff often drove rented vehicles while transporting methamphetamine that he kept in a safe.

Next, the confidential informant—who had a track record of helping law enforcement and providing accurate information—told Deputy Dennis that Huff wanted to sell her methamphetamine. The officers set up the buy-bust operation and obtained more information that corroborated the tips. For instance, they received screenshots of the confidential informant's messages with Huff setting up the drug transaction.

Sure enough, Huff arrived at the agreed-upon location for the drug sale. Director Conn recognized him from his driver's license picture even though he was driving a different type of vehicle than expected. Huff proceeded to park his truck next to the confidential informant's car in

a position suggesting a drug deal. When the officers confronted Huff, he stated that the truck was a rental, and he claimed that he did not know the person next to whom he had just parked.

At that point, "an objective observer exercising common sense" would conclude that there was a fair probability that drugs would be found inside the truck. *United States v. Strickland*, 144 F.3d 412, 417 (6th Cir. 1998). The totality of the circumstances—including the known informants' tips, Huff's communications setting up the drug sale, his arrival at the agreed-upon location of the drug sale, his suspicious parking position, and his claim that he did not know the driver of the car next to which he had just parked—established at least a "fair probability" that a search of Huff's vehicle would reveal illegal drugs. *Gates*, 462 U.S. at 238. Thus, probable cause was established even before Deputy Dennis deployed Dunya.[1]

Huff resists this conclusion, arguing that the confidential informants' tips were insufficiently corroborated. We disagree.

First, Huff argues that although the Facebook messages stated that he would arrive in a white Hyundai, he instead arrived in a gray pickup truck. But this detail hardly affects the probability of whether drugs would be found in whichever vehicle Huff chose to drive to the agreed-upon location of the drug sale. Director Conn recognized Huff from his photograph when he pulled into the parking lot, obviating any need to identify him by the type of vehicle he was driving. And Huff's arrival in a different type of vehicle fit with what the officers already knew about Huff's drug-sale practices—he often used rental vehicles. *See, e.g.*, *United States v. Garcia*, 982 F.3d 844, 845–46 (1st Cir. 2020) (explaining that an informant's tip "was consistently corroborated" even though the suspect arrived in a different vehicle than predicted).

---

[1]Because we conclude that police had probable cause even before the police deployed Dunya, we need not reach Huff's additional argument that Dunya's alert was unreliable.

Second, Huff contends that officers lacked probable cause because they neither observed a drug sale nor heard any mention of drug activity before intervening. But "[t]he law does not require that an illegal act be completed for sufficient probable cause to develop; it merely requires the existence of 'facts that . . . could lead a reasonable person to believe that an illegal act has occurred or is about to occur.'" *United States v. Gill*, 685 F.3d 606, 610 (6th Cir. 2012) (quoting *Strickland*, 144 F.3d at 416). The police had seen the Facebook messages between Huff and the confidential informant setting up the drug sale. By the time Huff parked the truck directly beside the confidential informant in a position suggesting a drug deal, the police had probable cause that there would be drugs inside Huff's truck.

Finally, Huff contends that "Director Conn and Deputy Dennis did not believe that they had probable cause to search Huff's vehicle based on the 'buy-bust' operation alone," citing Director Conn's testimony that Dunya's alert ultimately provided probable cause to search Huff's vehicle. But officers' subjective beliefs about when probable cause was established are "irrelevant in determining whether probable cause exists." *United States v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991). "Just as a subjective belief by the arresting officer would not establish probable cause where none existed, a subjective belief by the arresting officer cannot destroy probable cause where it exists." *Id.*

### III.

For these reasons, we affirm the district court's judgment and denial of the motion to suppress.