OPINION
{¶ 1} Plaintiff-appellant, Caressa Barnes, appeals a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Meijer Stores Limited Partnership ("Meijer"), the city of Fairfield, and William Shobe, a detective with the Fairfield Police Department. We affirm the trial court's decision.
 {¶ 2} This appeal stems from the arrest, detention, and prosecution of appellant in connection with a counterfeit payroll check cashed at a Meijer store on South Gilmore Road in Fairfield, Ohio.
 {¶ 3} Appellant does not have a driver's license but has an Ohio State I.D. card. Around January 10, 2001, appellant discovered that her I.D. card was missing. She did not report the loss. Rather, when she applied for a new card on January 22, 2001, she indicated on the application form that her previous I.D. card was stolen and lost. On January 6, 2001, a payroll check from Park National Bank in Newark, Ohio, payable to Caressa Barnes in the amount of $589, endorsed by Caressa Barnes, and bearing an I.D. number identical to the I.D. number on appellant's I.D. card was cashed at Meijer. The check, which had a thumbprint on the back, was returned to Meijer as being fraudulent.
 {¶ 4} James Reece, a Meijer Service Desk Cashier, testified that when a check is presented at the service desk for cashing, the cashier asks for identification, compares the photo on the I.D. to the person seeking to cash the check, compares the check to a list of previously identified questionable or bad checks, and if it is not on the list, takes the check to a team leader for approval. Damien Wilker, a Meijer Service Area Team Leader since 1996, confirmed the procedure. Reece also testified that any check over $200 requires a thumbprint. Although identified as the cashier who cashed the fraudulent check in January 2001, Reece could not recall anything about the check or that day at his deposition two years later. By contrast, Det. Shobe testified that as part of his investigation of the fraudulent check, he spoke to Reece who indicated he did compare the I.D. photo to the person seeking to cash the check and believed them to be the same person.
 {¶ 5} Wilker testified that an Ohio State I.D. card was not an acceptable form of identification to cash a check in 2001. Wilker testified that while now, any check over $150 must be approved by a team leader, he did not know what the amount was in 2001. Wilker also testified that while the check cashing limit is now $300 per day, it may have been $600 in 2001. Meijer's check cashing policy defines a payroll check as a check "from a local, or otherwise well-known employer." Wilker testified that Park National Bank was not a well-known employer to him. Wilker also testified that he did not know if he was working on January 6, 2001, and that the fraudulent check could have been approved by someone else.
 {¶ 6} After the fraudulent check was returned to Meijer, Hays Flanigan, a Meijer Loss Prevention Coordinator, called the Fairfield Police Department to make a worthless document report. Flanigan then handed the fraudulent check to the police. Flanigan testified that his role upon receiving fraudulent checks is simply to hand them to the police. Flanigan does not investigate fraudulent checks.
 {¶ 7} Det. Shobe was assigned to the case on January 29, 2001. Det. Shobe testified he tried to call appellant but could not find a phone number to reach her. During his investigation, he obtained a copy of appellant's state I.D. card from the Ohio Bureau of Motor Vehicles ("BMV"), a mug shot of appellant from the Hamilton County Sheriff's Office, and appellant's criminal record. Det. Shobe testified that when he obtained the copy of appellant's state I.D. card, "it didn't show up on the printout * * * as being reported lost or stolen to the BMV[.]" The mug shot from the sheriff's office matched the photo on appellant's I.D. card. Appellant's criminal record indicated she had previously been convicted on a charge of passing bad checks. Comparing the signature on the state I.D. card with the signature on the back of the fraudulent check, Det. Shobe believed both signatures to be similar. Based upon the foregoing as well as appellant's name and identifiers on the fraudulent check, Det. Shobe determined probable cause existed to have an arrest warrant issued for appellant and criminal charges instituted.
 {¶ 8} Appellant was arrested on March 22, 2001. Appellant denied cashing the fraudulent check, and told Det. Shobe that her state I.D. card had been stolen. After obtaining handwriting samples from appellant, Det. Shobe conducted further investigation, including fingerprint and handwriting analyses. The results of the analyses indicated that the fingerprint on the back of the check was not appellant's and that the handwriting on the check did not match appellant's. The charges against appellant were subsequently dropped.
 {¶ 9} Appellant filed a complaint against Meijer, Fairfield, and Det. Shobe for false arrest, false imprisonment, malicious prosecution, and violation of Section 1983, Title 42, U.S. Code. Meijer moved for summary judgment. So did Fairfield and Det. Shobe. On August 25, 2003, the trial court granted summary judgment in favor of Meijer, Fairfield, and Det. Shobe. This appeal follows in which appellant raises five assignments of error which will be considered out of order.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "The trial court erred when it held that meijer was not liable to appellant in connection with her malicious prosecution, false arrest and false imprisonment claims."
 {¶ 12} Summary judgment is appropriately rendered when there is no genuine issue as to any material fact; the moving party is entitled to judgment as a matter of law; and reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 66. This court reviews a trial court's determination on a motion for summary judgment de novo. Burgessv. Tackas (1998), 125 Ohio App.3d 294, 296.
 {¶ 13} To prevail on a malicious prosecution claim, a plaintiff must prove (1) malice in initiating or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. Trussell v. GeneralMotors Corp. (1990), 53 Ohio St.3d 142, syllabus. The "gist" of any action for malicious prosecution is lack of probable cause.Melanowski v. Judy (1921), 102 Ohio St. 153, paragraph one of the syllabus. If the plaintiff cannot show lack of probable cause, the claim for malicious prosecution fails as a matter of law. Davis v. Peterson (Mar. 29, 1995), Summit App. No. 16883, 1995 WL 134796, at * 3. Probable cause exists when the facts and circumstances are such that a cautious individual would be warranted in the belief that the person accused is guilty of the offense with which he or she is charged. Guy v. McCartney,
Jefferson App. No. 00 JE 7, 2002-Ohio-3035, ¶ 21. Whether the accused actually committed the crime is not pertinent to a probable cause determination. Id. at ¶ 22.
 {¶ 14} Appellant contends that there was a complete lack of probable cause for Meijer to report that she had cashed the fraudulent check. We disagree. On January 6, 2001, a payroll check from Park National Bank payable to Caressa Barnes and endorsed by Caressa Barnes was cashed at Meijer. The check bore appellant's name, an address, and an I.D. number identical to the I.D. number on appellant's I.D. card. The check was returned to Meijer as being fraudulent. Park National Bank told Meijer that the check was not a proper and authorized payroll check and that Caressa Barnes was not one of its employees. Based upon this information, Meijer clearly had probable cause to report the fraudulent check to the police for investigation. Appellant's claim for malicious prosecution against Meijer therefore fails as a matter of law.
 {¶ 15} Claims for false arrest and false imprisonment require proof of the same essential elements. A false arrest and false imprisonment claim is made by showing (1) the intentional detention of the person, and (2) the unlawfulness of the detention. See Niessel v. Meijer, Inc., Warren App. No. CA2001-04-027, 2001-Ohio-8645. To establish a claim for false imprisonment, one must prove by a preponderance of the evidence that he was intentionally detained or confined without lawful privilege and against his consent. Id. False imprisonment is not concerned with good or bad faith or malicious motive. Rogers v.Barbera (1960), 170 Ohio St. 241, 244.
 {¶ 16} The record clearly shows that Meijer never restricted, arrested, or detained appellant in any manner. A cause of action for false arrest can only be brought against the persons making the arrest, or their employees. See Hamilton v. Best Buy,
Montgomery App. No. 19001, 2002-Ohio-924; see, also, Barilatz v.Luke (Dec. 7, 1995), Cuyahoga App. No. 68304 (judgment on the pleadings granted for false imprisonment due to lack of detention by wife where wife alleged to have filed complaint but law enforcement alleged to have imprisoned husband). Appellant's claims of false arrest and false imprisonment against Meijer therefore must fail.
 {¶ 17} In addition, private citizens who call upon assistance from law enforcement officers are insulated from tort liability if their request for assistance does not amount to a request for arrest. Niessel, Warren App. No. CA2001-04-027, at 14, quotingWhite v. Standard Oil Co. (1984), 16 Ohio App.3d 21. To impose liability on a private citizen for a wrongful arrest, the arrest by the officer must be so induced or instigated by the defendant that the arrest is made by the officer, not of his own volition, but to carry out the request of the defendant. Beverly v. TheLawson Company (Aug. 18, 1983), Cuyahoga App. No. 45119, 1983 WL 4607, at *4. No liability is incurred if a person merely gives information to an officer tending to show a crime has been committed. Id. The same applies if the action is one for false imprisonment. Id.
 {¶ 18} Upon receiving the fraudulent check, Meijer contacted the police to make a worthless document report, and then simply handed the check over to the police. Nothing more was done by Meijer. There was no evidence Meijer directed the police to do anything. Meijer's call to the police was not a request to apprehend appellant. Rather, it was merely a call to aid in the investigation of the fraudulent check. Id.; Niessel at 15. As a result, appellant's false arrest and false imprisonment claims against Meijer must fail.
 {¶ 19} We therefore find that the trial court did not err by granting summary judgment in favor of Meijer with regard to appellant's claims for malicious prosecution, false arrest, and false imprisonment. Appellant's first assignment of error is overruled.
 {¶ 20} Assignment of Error No. 2:
 {¶ 21} "The trial court erred when it did not hold meijer responsible for its negligence in failing to follow its check cashing policy, which ultimately led to the arrest, incarceration and prosecution of appellant."
 {¶ 22} Appellant essentially argues that by implementing a check cashing policy, Meijer undertook a duty to protect innocent individuals such as appellant against fraud. Such duty was breached, and thus Meijer was negligent, when Meijer failed to follow its policy with regard to the fraudulent check cashed on January 6, 2001. Appellant fails to cite, and we have not found any cases in support of her argument. We decline to recognize such a duty. The check cashing policy was clearly put into place by Meijer to protect Meijer, not patrons or individuals like appellant. We therefore find that the trial court did not err by not holding Meijer responsible for allegedly failing to follow its check cashing policy. Appellant's second assignment of error is overruled.
 {¶ 23} Assignment of Error No. 4:
 {¶ 24} "The trial court erred when it held that detective shobe was entitled to immunity under R.C. § 2744 in connection with appellant's state law claims."
 {¶ 25} As employees of a political subdivision, police officers are generally protected by limited statutory immunity. R.C. 2744.03(A)(6) provides that "[i]n an action brought against * * * an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, * * * the employee is immune from liability unless * * * (a) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) liability is expressly imposed upon the employee by a section of the Revised Code."
 {¶ 26} The terms "malice," "bad faith," "wanton," and "reckless" have been defined as follows: "Malice" is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. Jackson v. Butler Cty. Bd. of Commrs.
(1991), 76 Ohio App.3d 448, 453-454. "Bad faith" involves a dishonest purpose, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will, or an actual intent to mislead or deceive another. Id. at 454. "Reckless" or "wanton misconduct" is a complete disregard for the care and safety of others, indifference to the consequences, with a belief that probable harm will result. Wynn v. Butler Cty. Sheriff's Dept.
(Mar. 22, 1999), Butler App. No. CA98-08-175, at 6.
 {¶ 27} Appellant argues that Det. Shobe is not entitled to immunity under R.C. 2744.03(A)(6) because he acted without probable cause, that is, with malicious purpose, bad faith, or in a wanton or reckless manner in filing charges, issuing an arrest warrant, and continuing the prosecution against her. Appellant correctly asserts that in a malicious prosecution action, malice may be inferred from lack of probable cause. See Garza v.Clarion Hotel, Inc. (1997), 119 Ohio App.3d 478 (malice may be inferred when evidence demonstrates charges were filed without probable cause). However, "[p]robable cause does not depend on the guilt or innocence of the accused but upon the information available to the police officer and whether he acted on that information `as would any reasonable and prudent man.'" Finn v.Amelia (Mar. 27, 1989), Clermont App. No. 88-10-073, at 6.
 {¶ 28} Det. Shobe received the fraudulent check on January 29, 2001. The check was payable to and endorsed by a Caressa Barnes, appellant's name. Det. Shobe tried to call appellant but could not find a phone number to reach her. Det. Shobe testified that he can often find out an I.D. card was stolen by calling the person who allegedly cashed the check. During his investigation, he obtained a copy of appellant's state I.D. card from the BMV, a mug shot of appellant from the Hamilton County Sheriff's Office, and appellant's criminal record. Det. Shobe testified that when he obtained the copy of appellant's state I.D. card, "it didn't show up on the printout * * * as being reported lost or stolen to the BMV[.]" As noted earlier, when appellant applied for a new card in January 2001, she indicated on the form that her previous I.D. card was stolen and lost.
 {¶ 29} The mug shot from the sheriff's office matched the photo on appellant's I.D. card. Appellant's criminal record indicated she had previously been convicted on a charge of passing bad checks. Comparing the signature on the state I.D. card with the signature on the back of the fraudulent check, Det. Shobe believed both signatures to be similar. During his investigation, Det. Shobe also spoke to Reece, the clerk who had cashed the check, who told him that he compared the I.D. photo to the person seeking to cash the check and believed them to be the same person. Based upon the foregoing, Det. Shobe felt it was not necessary to send the fingerprint on the check for analysis.
 {¶ 30} Appellant was arrested. Appellant's claim to Det. Shobe that her state I.D. card had been stolen prompted the detective to conduct further investigation, including fingerprint and handwriting analyses. The results of the analyses indicated that the fingerprint on the back of the check was not appellant's and that the handwriting on the check did not match appellant's. The charges against appellant were subsequently dropped.
 {¶ 31} In light of the foregoing, we find that a cautious person would have been warranted in believing that the fraudulent check was cashed by appellant. Det. Shobe had probable cause to file charges, issue an arrest warrant, and continue prosecution against appellant. We agree with the trial court that appellant has not presented any evidence from which reasonable minds could find that Det. Shobe acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Det. Shobe is therefore immune from liability pursuant to R.C. 2744.03(A)(6). Appellant's fourth assignment of error is overruled.
 {¶ 32} Assignment of Error No. 5:
 {¶ 33} "The trial court erred when it held that detective shobe was entitled to qualified immunity in connection with appellant's 42 U.S.C. § 1983 claim."
 {¶ 34} Section 1983 provides a remedy to persons whose federal rights have been violated by governmental officials. It states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress."
 {¶ 35} To establish a claim against an individual public official under Section 1983, a plaintiff must show that (1) the act was performed by a person under color of law, and (2) the act deprived the plaintiff of a federally protected right, either constitutional or statutory. 1946 St. Clair Corp. v. Cleveland
(1990), 49 Ohio St.3d 33, 34. Public officials, including police officers, who perform discretionary functions are entitled to qualified immunity in a Section 1983 action as long as their conduct does not violate clearly established federal rights of which a reasonable person would have known. Cook v. Cincinnati
(1995), 103 Ohio App.3d 80, 85, citing Harlow v. Fitzgerald
(1982), 457 U.S. 800, 102 S.Ct. 2727.
 {¶ 36} Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v.Briggs (1986), 475 U.S. 335, 341, 106 S.Ct. 1092. A police officer "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue[.]" Id.
 {¶ 37} In this assignment of error, appellant essentially argues that her Fourth and Fourteenth Amendments rights were violated because Det. Shobe had no probable cause to file charges and issue an arrest warrant against her. However, we have found under appellant's fourth assignment of error that Det. Shobe had probable cause to file charges and issue an arrest warrant against appellant. Det. Shobe is therefore entitled to qualified immunity with regard to appellant's Section 1983 claim. SeeCarlton v. Davisson (1995), 104 Ohio App.3d 636 (plaintiff's Section 1983 action for alleged civil rights violations fails where plaintiff failed to offer facts to create issue of material fact as to whether deputy lacked probable cause to arrest). Appellant's fifth assignment of error is overruled.
 {¶ 38} Assignment of Error No. 3:
 {¶ 39} "The trial court erred when it held that the city of fairfield was entitled to immunity in connection with plaintiff's42 U.S.C. § 1983 claim."
 {¶ 40} A municipality may not be held liable under Section 1983 solely because it employs a tortfeasor. Bd. of Cty. Commrs.of Brian Cty., Okla. v. Brown (1997), 520 U.S. 397, 403,117 S.Ct. 1382. To impose Section 1983 liability upon a municipality, a plaintiff must identify a municipal policy or custom that caused the injury. Id. "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the `moving force' behind the injury alleged. That is, [the] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. at 404. (Emphasis sic.) A municipal policy exists "when a decision-maker possessing final authority to establish municipal policy regarding the action in question issues a proclamation, rule, or edict." Miller v. Leesburg
(Dec. 1, 1998), Franklin App. Nos. 97APE10-1379 and 97APE10-1380, 1998 WL 831404, at *6.
 {¶ 41} To prevail on her claim, appellant must therefore show that Fairfield has a policy or custom which operates to deprive her of her constitutional rights. Appellant identifies General Order No. 2001-13 from the Fairfield Police Department as the "policy" that caused her injury. The document, which sets forth guidelines to police officers when investigating criminal complaints, gives broad discretion to officers in the manner they conduct their investigation.
 {¶ 42} Appellant generally argues that when a policy implemented by a municipality is followed by its employees and is the driving force behind the deprivation of a plaintiff's constitutional rights, the municipality is liable under Section 1983. Thus, appellant contends that Fairfield is liable under Section 1983 because Det. Shobe, abusing his discretion under the "policy" by failing to properly investigate the case before she was arrested, filed charges and issued an arrest warrant against her without probable cause. We disagree.
 {¶ 43} That a plaintiff has suffered a deprivation of rights at the hand of a municipal employee will not alone permit an inference of municipal culpability and causation. Brown,520 U.S. at 405, 117 S.Ct. 1382. Appellant has failed to demonstrate that, through its "deliberate" conduct, Fairfield was the "moving force" behind her injury as required by the United States Supreme Court. Appellant has also failed to demonstrate that the municipal action was taken with the requisite degree of culpability; nor has appellant shown a direct causal link between the municipal action and the deprivation of appellant's rights. See, also, Mayes v. Columbus (1995), 105 Ohio App.3d 728 (city was not liable under Section 1983 absent any evidence that policy of police department was to arrest burglary suspects without probable cause). Appellant's Section 1983 claim against Fairfield therefore must fail. Appellant's third assignment of error is overruled.
 {¶ 44} The judgment is affirmed.
Judgment affirmed.
Powell and Valen, JJ., concur.