[Cite as *Betzko v. Mick*, 2022-Ohio-999.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| CLAIR BETZKO, | : | |
| Appellant, | : | CASE NO. CA2021-08-018 |
| | : | O P I N I O N |
| - vs - | | 3/28/2022 |
| | : | |
| CHARLES MICK, et al., | : | |
| Appellees. | : | |

CIVIL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CVH20180307

The Behal Law Group LLC, and John M. Gonzales, for appellant.

Fischer, Evans & Robbins, Ltd., and Mark F. Fischer and James A. DeSmith, for appellees, Teresa Bayer and Karen Francis.

Reminger Co., L.P.A., and Patrick Kasson and Thomas N. Spyker, for appellee, Charles Mick.

**PIPER, P.J.**

{¶1} Appellant, Clair Betzko, appeals the decision of the Fayette County Court of Common Pleas granting summary judgment to appellees, Charles Mick, Karen Francis, and Teresa Bayer. Betzko is the former mayor of the village of New Holland. The individual appellees disapproved of, and questioned, Betzko's performance as mayor. They expressed their disapproval and criticism in a number of ways and as a result of their

actions, Betzko filed a civil suit against them. For the reasons detailed below, we affirm the trial court's decision.

{¶2} The record reflects that Francis and Bayer had voiced concerns about the handling of government affairs. The two frequently posted to social media and were administrators of a Facebook group page which was often critical on a variety of issues including public officials and the local government. Bayer also erected signs in her yard that stated, "STOP THE CORRUPTION" and "MAKE NH GREAT AGAIN DRAIN THE SWAMP STOP THE CORRUPTION." In addition, the defendants participated in exchanges with an individual named Derek Myers.[1] Myers is a freelance news reporter who published an electronic forum called The Advocate. Myers was behind several critical social media posts alleging public corruption and publishing unflattering articles in The Advocate.[2]

{¶3} Francis and Bayer became concerned that certain public officials and law enforcement officers had been stalking and harassing them due to their public commentaries. They made complaints and sent letters to various agencies, including then-Attorney General Mike DeWine. The letter to Attorney General DeWine provided a list of general concerns in a variety of areas, such as the possibility of abuse of power, speed traps, nepotism, inflated charges on water and sewer, intimidation, and harassment. The record does not reveal that any action or response was made in regard to the letter.

{¶4} In 2018, Mick was hired as a village police officer under the supervision of Chief Jason Lawless. Soon after starting with the department, Mick met with Francis and Bayer in a park outside the village to "talk in general about the police force." Francis and

---

1. Among the many emails supplied by Betzko, one such message was an email sent by Myers to Bayer and Francis entitled "JASON TAKEDOWN PLAN" alleging that Chief Jason Lawless has committed crimes. Bayer forwarded the message to Francis stating "Derek sent this to me. Thoughts?"

2. Many of Myers' social media posts and emails are included as exhibits in this case to further Betzko's claims concerning the alleged conspiracy to remove him from office, yet Myers was not named as a defendant in the suit.

- 2 -

Bayer expressed their concerns with Betzko's leadership of the village. Francis and Bayer also told Mick they suspected members of the police department were stalking and harassing them.

{¶5} Betzko later learned of this meeting and accused Mick of violating the public trust. Betzko also believed there was a conflict of interest because he had personally filed charges against Bayer for intimidating a public servant and thought Mick should have gotten a "third-party opinion on it." The "it" was evidently whether Mick should have talked with Francis and Bayer to begin with.

{¶6} Following the meeting at the park, another woman, Brenda Landman organized a meeting with Mick at the police department. This meeting involved charges against an individual that she no longer wanted to pursue. When Betzko learned about the meeting with Landman, he called Mick instructing him to conclude the interview. Mick stopped the interview but claimed his discussion with Landman was over anyway. Betzko later testified that he believed it was improper for a police officer to meet with Landman alone and viewed the interview as another example of Mick being insubordinate and violating the public trust. The record does not clearly establish in what manner the public trust was being violated.

{¶7} During this period of time, Chief Lawless resigned his position and left the state. The record suggests that the relationship between Mick and Betzko had become irreparably damaged. In a meeting with the new police chief, David Conrad, Betzko expressed the need to investigate Mick based on the interview he had with Landman and the meeting with Francis and Bayer. Betzko decided to fire Mick from the police force, but stopped short of informing him of his dismissal.

{¶8} Meanwhile, Mick began an investigation into Betzko's conduct. Mick believed that Betzko had obstructed his investigation by requesting that he stop interviewing

Landman. Adding to Mick's suspicion of Betzko, Mick believed there was evidence that Betzko had committed forgery. The document in question was a SF400 form that contained the signature of Chief Lawless.[3] As Mick stated in his deposition, he was suspicious of the signature because he knew that Chief Lawless was out of state and therefore believed that Betzko had signed Lawless' name to the document.

{¶9} Mick obtained a search warrant for the village office to search for "[a]ny records, ledgers, or documents" related to the alleged forgery. On July 23, 2018, Mick served Betzko with criminal charges for felony forgery and misdemeanor obstruction at a city council meeting. Those charges were later dismissed by the Pickaway County Prosecutor.

{¶10} On November 27, 2018, Bayer filed a malfeasance complaint against Betzko. The complaint contained the signatures of Bayer and nine other electors of the village of New Holland. The complaint, among other things, alleged that Betzko's son had improperly changed the speed limit signs without prior approval from the Ohio Department of Transportation. The complaint also referenced the criminal charges brought by Mick and alleged that Betzko was "guilty of malfeasance in office." The complaint was eventually dismissed.

{¶11} On October 16, 2018, Betzko filed a civil complaint which he later amended on January 15, 2019. Betzko alleged that Mick's conduct in filing criminal charges against him amounted to malicious prosecution and abuse of process. He also alleged Bayer committed malicious prosecution and abuse of process when she joined with the other nine citizens in filing the malfeasance complaint filed against him. Betzko alleged that Francis, Bayer, and Mick had defamed him, placed him in a false light, and were engaged in a civil

---

3. A SF400 form is a document entitled "Notice of Peace Officer Appointment."

conspiracy. Betzko requested both actual damages and punitive damages in excess of $350,000. The parties exchanged discovery and appeared for depositions. Each defendant then moved for summary judgment. Following review, the trial court granted summary judgment in favor of the defendants. Betzko now appeals, raising a single assignment of error for review:

{¶12} THE TRIAL COURT ERRED BY GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT.

{¶13} In his sole assignment of error, Betzko argues the trial court erred by granting summary judgment in favor of the defendants. This court reviews summary judgment decisions de novo, which means we review the trial court's judgment independently and without deference to the trial court's determinations, using the same standard in our review that the trial court should have employed. *Ludwigsen v. Lakeside Plaza, L.L.C.*, 12th Dist. Madison No. CA2014-03-008, 2014-Ohio-5493, ¶ 8. Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion which is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-70 (1998).

{¶14} The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Robinson v. Cameron*, 12th Dist. Butler No. CA2014-09-191, 2015-Ohio-1486, ¶ 9. Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact which remains for the trier of fact to resolve. *Id.* In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party. *Vanderbilt v. Pier 27, L.L.C.*, 12th Dist. Butler No. CA2013-02-029, 2013-Ohio-5205, ¶ 8.

{¶15} As previously mentioned, Betzko brought claims for: (1) defamation, (2)

malicious prosecution, (3) false light, (4) abuse of process, and (5) civil conspiracy. In granting summary judgment, the trial court found that Betzko's claims for malicious prosecution and abuse of process were without merit because they were commenced with probable cause and the statements made in connection with those proceedings were not defamatory. The trial court further found that the statements made by the defendants may be characterized as honest opinions or extreme distortions of fact that did not rise to the level of actionable tortious conduct. The trial court then granted summary judgment in favor of the defendants on all claims. After a de novo review of the record, and applying the applicable law, we find the trial court did not err when it granted summary judgment to the defendants.

## Defamation

{¶16} "Defamation is a false publication that injures a person's reputation." *Ebbing v. Stewart*, 12th Dist. Butler No. CA2016-05-085, 2016-Ohio-7645, ¶ 12; *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9; *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, ¶ 53 ("publication" for defamation purposes is a word of art, which includes any communication by the defendant to a third person).

{¶17} There is no dispute for purposes of summary judgment that Betzko was a public official. *See Becker v. Internatl. Assn. of Firefighters Local 4207*, 12th Dist. Warren No. CA2010-03-029, 2010-Ohio-3467, ¶ 10. Statements made about public officials are constitutionally protected when the statements concern anything that may touch on an official's fitness for office. *Burns v. Rice*, 10th Dist. Franklin No. 03AP-717, 2004-Ohio-3228, ¶ 20, citing *Soke v. Plain Dealer*, 69 Ohio St.3d 395, 397(1994).

{¶18} Under the standard enunciated in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280, 84 S.Ct. 710 (1964), a public official may not recover damages for a defamatory falsehood relating to his official conduct unless he proves that the statement

was made with "actual malice," that is, with knowledge that it was false or with reckless disregard of whether it was false. *Perez v. Scripps-Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988) (law of Ohio and federal law are in accord on these principles). Additionally, proof of actual malice must be clear and convincing. *Becker* at ¶ 11, citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 94 S.Ct. 2997 (1974).

{¶19} In the matter sub judice, Betzko presented no evidence of actual malice. In his appellate brief, Betzko cites 25 statements that were either made by the defendants or a "John Doe." Some of these statements were made on social media while others were made in email correspondence. Betzko argues that each statement made by an individual defendant should be imputed to all other defendants because Betzko alleges they were involved jointly in a combined conspiracy to ruin his reputation. In his complaint Betzko stated that "Mick's actions along with Defendants Francis, Bayer and John Doe's actions were intentional, preplanned, with a malicious purpose, in bad faith, wanton, reckless and defamatory."

{¶20} Contrary to Betzko's claims otherwise, his claims must fail as a matter of law. The record contains a number of examples of name-calling and general incivility, but nothing that gives rise to an actionable claim in tort. *See, e.g., Soke v. The Plain Dealer*, 69 Ohio St.3d 395, 397 (1994) (statements made about public officials are constitutionally protected when the statements concern "anything which might touch on an official's fitness for office"). As the supreme court has stated:

> [L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion,

and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

*Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369, 375 (1983) (overruled on other grounds). We have reviewed the statements made by the defendants in their criticism of Betzko and, while many of the statements can clearly be characterized as inconsiderate, unkind, or rude, we find no evidence such statements were made with actual malice.[4] We further agree with the trial court's characterization of the statements as involving instances of honest opinions or extreme distortions of fact. Uninformed opinions like narrow-minded opinions are not actionable otherwise society would see its legal system congested with civil litigation. Accordingly, we find the trial court did not err by granting summary judgment on Betzko's claims for defamation.

### Malicious Prosecution

**{¶21}** To establish a claim for malicious prosecution, the plaintiff must prove (1) malice in initiating or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. *Frazier v. Clinton Cty. Sheriff's Office*, 12th Dist. Clinton No. CA2008-04-015, 2008-Ohio-6064, ¶ 14. The core of any action for malicious prosecution is lack of probable cause. *Barnes v. Meijer Dept. Store*, 12th Dist. Butler No. CA200309-246, 2004-Ohio-1716, ¶ 13. If the plaintiff cannot show lack of probable cause, the claim for malicious prosecution fails as a matter of law. Frazier at ¶ 14.

**{¶22}** Probable cause exists when there is sufficient information, derived from personal knowledge or from a trustworthy source, which would lead a prudent person to believe the accused committed an offense. *Id.* Whether the accused actually committed

---

4. We note that many of the comments attributed to the defendants come from a group Facebook page called "New Holland Ohio Let's Chat" community.

- 8 -

an offense is not pertinent to a probable cause determination. *Barnes* at ¶ 13. A court reviews the totality of facts and surrounding circumstances to determine whether probable cause exists. *State v. Gagaris*, 12th Dist. Butler No. CA2007-06-142, 2008-Ohio-5418, ¶ 13.

{¶23} In Betzko's complaint, he alleged that the charges Mick filed against him for obstruction and forgery were not supported by probable cause and were frivolous. He also alleged that Bayer's malfeasance complaint was malicious and was "using the court system as her tool."

{¶24} Once again, we find Betzko's claims must fail as a matter of law. Betzko failed to provide any evidence, much less clear and convincing evidence, that Mick made any statements or engaged in any act with malice. Although the charges filed by Mick were ultimately dismissed, such a result is not pertinent to a determination of probable cause.

{¶25} In this case, Mick had probable cause to charge Betzko with obstructing his investigation concerning Landman and for forgery concerning the SF400 document. Although facts later came to light that ultimately resulted in the dismissal of the charges, we find that Mick's actions were commenced with probable cause.

{¶26} We further find that Bayer's participation in the statutory malfeasance complaint does not constitute malice and therefore is not actionable. While Betzko may believe that Mick and Bayer treated him unfairly, we find there was no actionable tortious activity to support a claim for malicious prosecution.

### False Light

{¶27} In Ohio, one who places another before the public in a false light is subject to liability to the other for invasion of privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person and (b) the person publicizing the falsity had knowledge of the falsity, or acted in reckless disregard as to the falsity of the publicized

matter, and the false light in which the other would be placed. *See Welling*, 2007-Ohio-2451 at syllabus. "Publicity" means that the matter is made public, by communicating it to the public at large, or that the matter was communicated to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. *Id.* at ¶ 53.

**{¶28}** Betzko presents limited argument on this claim, arguing in his appellate brief that "[r]eview of the documents in the record reveal the extent of the conspiracy to defame [Betzko] and place him in false light." We find that argument to be unpersuasive. The defendants were certainly critical of Betzko's fitness to serve as mayor and made unkind and rude comments directed towards him and the way in which the village was governed, yet none of the statements are actionable in tort. The defendants' hyperbole, in this instance, does not rise to the level of false light as a matter of law. *See, e.g., Mann v. Cincinnati Enquirer*, 1st Dist. Hamilton No. C-090747, 2010-Ohio-3963, ¶ 23.

Abuse of Process

**{¶29}** The three elements for abuse of process are "(1) that a legal proceeding has been set in motion in proper form and with probable cause, (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed, and (3) that direct damage has resulted from the wrongful use of process." *Mansour v. Croushore*, 194 Ohio App.3d 819, 2011-Ohio-3342, ¶ 10 (12th Dist.). There is no liability for abuse of process, however, where the defendant has done nothing more than carry out a process to its authorized conclusions. *Id.* In other words, "[a]buse of process encompasses cases where 'legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed.'" *Id.*, quoting *Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 68 Ohio St.3d 294, 297 (1994).

**{¶30}** Similar to his claim for malicious prosecution, Betzko argues that the charges

Mick filed against him were an abuse of process. He also alleges that Bayer's actions in filing the malfeasance complaint was an abuse of process. Betzko argues that both charges were filed to accomplish the ulterior purpose of having him resign from his position as mayor.

{¶31} Upon reviewing the record, we find there is no genuine issue of material fact concerning Betzko's claims for abuse of process. Initially, we note that Betzko failed to assert that the proceedings were supported by probable cause in his complaint. To the stark contrary, Betzko specifically argued that Mick acted without probable cause. Moreover, there are no damages resulting from any alleged wrongdoing. As noted above, the criminal charges against Betzko were dismissed following review by the prosecutor's office and Bayer's malfeasance complaint was likewise dismissed. Despite suppositions and conclusory allegations, Betzko fails to establish a genuine issue of material fact concerning his claims of abuse of process.

Civil Conspiracy

{¶32} A civil conspiracy is a "malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages." *Mohme v. Deaton*, 12th Dist. Warren No. CA2005-12-133, 2006-Ohio-7042, ¶ 36. Exchanges on a Facebook page of persons in agreement of critical disapproval does not create a tort of civil conspiracy. An action for civil conspiracy cannot be maintained unless an underlying unlawful act is committed. *Wells Fargo Bank v. Smith*, 12th Dist. Brown No. CA2012-04-006, 2013-Ohio-855, ¶ 53.

{¶33} We have held that the trial court correctly granted summary judgment in favor of the defendants on the claims discussed previously. Without an underlying tort, Betzko cannot establish a claim for civil conspiracy. *Id.* at ¶ 54. Consequently, the trial court did not err in granting summary judgment in favor of the defendants on the civil conspiracy

claim.

{¶34} Having reviewed Betzko's claims, we find the trial court did not err in granting summary judgment to the defendants. Accordingly, Betzko's sole assignment of error is without merit.

{¶35} Judgment affirmed.

HENDRICKSON, J., concurs.

BYRNE, J., concurs separately.

**BYRNE, J., concurring separately.**

{¶36} I concur with the court's opinion, which goes into detail about the elements of Betzko's various claims and applicable case law in explaining why the trial court did not err when it granted summary judgment. I write separately, however, to take a step back to look at the bigger picture. This case serves as an important reminder of why the guarantees of the right to free speech found in the First Amendment to the United States Constitution and Article I, Section 11 of the Ohio Constitution are so important.

{¶37} I do not doubt that Betzko was angered, distressed, and embarrassed by many of the negative comments made about him by the defendants. But Betzko, like the judges of this court, was elected. When a citizen decides to run for public office, he or she is choosing to serve the public, which necessarily involves being open to public criticism. Some of that criticism may be inaccurate, uncivil, or mean-spirited, or may be based on what the criticized person views as "misinformation." In the social media era, many are more likely to shoot off a quick, sharp jab, which may or may not be well-informed, than to take the time to construct a well-reasoned argument. But whether the criticism that public officials face is inaccurate, uncivil, mean-spirited, or "misinformed" is beside the point, from a constitutional perspective. Criticism of elected officials is still protected speech. First

- 12 -

Amendment to the U.S. Constitution; Ohio Constitution, Article I, Section 11.

**{¶38}** "Political speech, of course, is 'at the core of what the First Amendment is designed to protect." *Morse v. Frederick*, 551 U.S. 393, 403, 127 S.Ct. 2618 (2007), quoting *Virginia v. Black*, 538 U.S. 343, 365, 123 S.Ct. 1536 (2003). "Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people." *Citizens United v. Fed. Election Comm.*, 558 U.S. 310, 339, 130 S.Ct. 876 (2010). A democratic republic cannot operate as it should, and the fundamental rights of individuals cannot be protected, if harsh criticisms of public officials are subject to policing by the courts each time a public official disagrees with that criticism. The same is true in a small village like New Holland, where Betzko was mayor.

**{¶39}** This is not to say that Betzko had no opportunity for relief. After all, as noted in the court's opinion, even a public official like Betzko may win a defamation claim if the official can show that the defendant acted with "actual malice," as required by *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 84 S.Ct. 710 (1964) (holding that the First Amendment "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not"). Betzko did not provide evidence of actual malice.

**{¶40}** All freedoms have costs. One of the costs of the First Amendment and Article I, Section 11 of the Ohio Constitution is that sometimes people will say things that are unpleasant, and maybe even wrong, and there is no redress for the offended party. This is a cost worth paying.