[**Cite as** *Georgin v. Georgin*, 2022-Ohio-4328.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| RACHEL GEORGIN, | : | CASE NO. CA2022-05-034 |
| Appellant, | : | O P I N I O N<br>12/5/2022 |
| | : | |
| - vs - | : | |
| | : | |
| MARJORIE GEORGIN, et al., | : | |
| Appellees. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 21CV94458

Faulkner & Tepe LLP, and David C. Ahlstrom, for appellant.

Rittgers & Rittgers, and Konrad Kircher and Ryan J. McGraw, for appellees.

**M. POWELL, P.J.**

{¶ 1} Appellant, Rachel Georgin, appeals a decision of the Warren County Court of Common Pleas granting summary judgment to appellee, Brendan Freisthler.

{¶ 2} Appellant and Andrew Georgin were divorced in 2017 and have since been involved in a contentious litigation in the domestic relations court over the allocation of parental rights and responsibilities for their child, Rory. Andrew is now married to Marjorie Georgin. Brendan is Marjorie's 19-year-old son and Andrew's stepson.

{¶ 3}   In 2019, Andrew moved to terminate the shared parenting plan for Rory.  A first hearing on the motion was held in June 2020; a second hearing was held on October 6, 2020.  On July 10, 2020, during the pendency of the custody litigation between appellant and Andrew, Marjorie obtained an ex parte civil protection order ("CPO") against appellant.  The ex parte CPO included Brendan as a protected party.  As pertinent here, the ex parte CPO provided, appellant "SHALL NOT ENTER the place of employment" of the persons protected by the CPO and "SHALL STAY AWAY" from and "not be present within 500 feet" of the protected persons "wherever those protected persons may be found."  The ex parte CPO further prohibited appellant from having any contact with the protected persons and provided that should appellant accidentally come in contact with a protected person, she "must depart *immediately*."

{¶ 4}   On October 2, 2020, appellant went to a wine store where, unbeknownst to her, Brendan was employed.  Appellant purchased some items and Brendan rang out her purchases without incident.  Appellant then left.  Appellant did not know Brendan, did not know what he looked like, and was not aware he was the person who waited on her at the check-out counter.  Brendan recognized appellant and was aware that his mother had a CPO against her.  Brendan called his mother to ask her if appellant's presence at the wine store violated the CPO.  Brendan then called the police to report the incident.

{¶ 5}   A deputy responded to the wine store and took a report. The police report indicates that Brendan "wanted to pursue criminal charges if possible" against appellant. The deputy contacted appellant and advised her that she would be charged with violating the CPO and that a warrant would be issued for her arrest.  The deputy then filed a complaint in the municipal court charging appellant with violating the ex parte CPO.  The matter proceeded to a bench trial on November 12, 2020, resulting in appellant's acquittal. The municipal court found there was probable cause to file the charge but that appellant

was unaware that Brendan worked at the wine store.

{¶ 6} The summary judgment evidence also reflects that Marjorie called the police multiple times between August 2020 and February 2021, alleging that appellant had violated the ex parte CPO. Criminal charges were not filed against appellant based on all of these calls and appellant was never convicted of violating the ex parte CPO. Hearings on Marjorie's petition for a CPO against appellant were held before a magistrate between October 2020 and March 2021. The magistrate did not issue a final CPO and vacated the ex parte CPO.

{¶ 7} On August 6, 2021, appellant filed a civil complaint against Andrew, Marjorie, and Brendan, alleging malicious prosecution, abuse of process, intentional infliction of emotional distress, and civil conspiracy. Brendan moved for summary judgment and attached his own affidavit in support of the motion. In his affidavit, Brendan averred that he was 18 years old at the time of the wine store incident, that he was scared when appellant entered his place of employment because he was aware of the conflict between appellant, Andrew, and Marjorie, and believed that appellant was "an unstable and dangerous person," and that

> I called my mother to ask what I should do. I then called the police for my protection.
>
> I was never asked whether to pursue charges. I understand that it was the prosecutor who made the choice to go forward with the hearing. I was told to appear and testify.
>
> I never acted in bad faith or with malice against [appellant]. I only acted for my own protection.

{¶ 8} Appellant filed a memorandum in opposition to Brendan's motion and attached her own affidavit and the police report from the wine store incident. On April 18, 2022, the trial court granted summary judgment in favor of Brendan. In so ruling, the trial court refused to consider the police report because it was unauthenticated and therefore

not competent summary judgment evidence.

{¶ 9} Appellant now appeals the trial court's decision, raising four assignments of error. All four assignments of error challenge the trial court's grant of summary judgment to Brendan.

{¶ 10} An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently and without deference to the decision of the trial court. *Betzko v. Mick*, 12th Dist. Fayette No. CA2021-08-018, 2022-Ohio-999, ¶ 13. Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there are no genuine issues of material fact to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when all evidence is construed most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389.

{¶ 11} The moving party bears the initial burden of producing evidence that affirmatively demonstrates the absence of a genuine issue of material fact as to the essential elements of the nonmoving party's claims. *Dresher v. Burt,* 75 Ohio St.3d 280, 292-293, 1996-Ohio-107. Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must produce competent evidence of the types listed in Civ.R. 56(C) demonstrating that there is a genuine issue for trial. Civ.R. 56(E); *Puhl v. U.S. Bank, N.A.*, 12th Dist. Butler No. CA2014-08-171, 2015-Ohio-2083, ¶ 13. Summary judgment is proper if the nonmoving party fails to set forth such facts. *Id.*

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE COURT ERRED IN GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION BASED ON THE COURT'S FAILURE TO CONSIDER THE POLICE REPORT OFFERED AND THUS THE FACTUAL

DISPUTES RELATED TO IT.

{¶ 14} Appellant argues the trial court erred in granting summary judgment to Brendan on her claim for malicious prosecution, raising two issues for review.

{¶ 15} To prevail on a claim for malicious prosecution, the plaintiff must prove (1) malice in initiating or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. *Betzko*, 2022-Ohio-999 at ¶ 21. The core of any action for malicious prosecution is lack of probable cause. *Id.* If the plaintiff cannot show lack of probable cause, the claim for malicious prosecution fails as a matter of law. *Id.* Probable cause exists when the facts and circumstances are such that a cautious individual would be warranted in the belief that the person accused is guilty of the offense with which he or she is charged. *Barnes v. Meijer Dept. Store*, 12th Dist. Butler No. CA2003-09-246, 2004-Ohio-1716, ¶ 13. Whether the accused actually committed an offense is not pertinent to a probable cause determination. *Id.*

{¶ 16} In her first issue for review, appellant argues that the police report shows there is a genuine issue of material fact as to whether Brendan initiated the CPO violation charge against her. Appellant asserts that the trial court erred in rejecting the police report as unauthenticated without first providing her the opportunity to authenticate the report.

{¶ 17} Civ.R. 56(C) provides an exclusive list of materials that a trial court may consider when deciding a motion for summary judgment. *Allstate Vehicle & Property Ins. Co. v. Inabnitt*, 12th Dist. Warren Nos. CA2021-10-094 and CA2021-10-098, 2022-Ohio-2098, ¶ 25. Those materials are "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact." Civ.R. 56(C). A party may properly introduce evidence not specifically authorized by Civ.R. 56(C) by incorporating it by reference through a properly framed affidavit pursuant to Civ.R. 56(E). *Id.* In order for any document presented to be admissible evidence for summary judgment

purposes, it must be accompanied by a personal certification that such document is, in fact, genuine. *Id.* "Due to the strict language of Civ.R. 56(C), '[d]ocuments which are not sworn, certified or authenticated by way of affidavit have no evidentiary value and shall not be considered by the trial court.'" *Id.* at ¶ 26, quoting *Mitchell v. Ross*, 14 Ohio App.3d 75, 75 (8th Dist.1984).

**{¶ 18}** Police reports "are not materials authorized by Civ.R. 56(C) for consideration on a motion for summary judgment." *Stevenson v. Prettyman*, 193 Ohio App.3d 234, 2011-Ohio-718, ¶ 27 (8th Dist.). Appellant did not incorporate the police report into a properly framed affidavit pursuant to Civ.R. 56(E) when she submitted the report in opposition to Brendan's summary judgment motion. *Butler v. Young*, 8th Dist. Cuyahoga No. 73549, 1999 Ohio App. LEXIS 32, *6-7 (Jan. 14, 1999). Appellant also did not certify that the unsigned police report was a true copy of what it purported to be. *Id.* at *7. Although the police report is a public record, the report was not self-authenticating because the document was not certified as a true copy of an official public record. *Id.*; *Stevenson* at ¶ 27.

**{¶ 19}** Appellant laments the fact that the trial court did not provide her with the opportunity to authenticate the police report as it could have easily been done. Appellant asserts that the failure to properly authenticate the police report was attributable to her prior attorney. Such argument implicitly acknowledges that the police report was unauthenticated. The trial court was not required to advise appellant of the law under Civ.R. 56 and appellant failed to avail herself of the procedure afforded by Civ.R. 56(F). Moreover, Ohio law recognizes that an attorney's neglect is imputed to his or her client. *Clark v. Ohio Dept. of Job & Family Servs.*, 8th Dist. Cuyahoga No. 105642, 2017-Ohio-9173, ¶ 14. A client is bound by the actions of his or her attorney. *Pomeroy v. Pomeroy*, 11th Dist. Ashtabula No. 2005-A-0032, 2006-Ohio-5833, ¶ 16. In light of the foregoing, the trial court did not err in refusing to consider the police report and we will not consider it in our analysis.

{¶ 20} In her second issue for review, appellant argues that the trial court erred in finding there was no genuine issue of material fact relating to the existence of probable cause to initiate the CPO violation charge against her. Appellant asserts the trial court ignored the rancor between appellant, Andrew, and Marjorie arising from the contentious custody dispute and the fact Brendan did not call the police until after he had spoken to Marjorie.

{¶ 21} We find that there is no genuine issue of material fact regarding appellant's claim of malicious prosecution because appellant failed to present evidence establishing that Brendan engaged in any act with malice or that he lacked probable cause to report the CPO violation to the police.

{¶ 22} Malice has been defined as "the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Sygula v. Regency Hosp. of Cleveland E.*, 8th Dist. Cuyahoga No. 103436, 2016-Ohio-2843, ¶ 29. "An inference of malice arises from the institution and continuation of a prosecution without probable cause." *Crosset v. Marquette*, 1st Dist. Hamilton Nos. C-060148 and C-060180, 2007-Ohio-550, ¶ 13.

{¶ 23} It is undisputed that there was an active and enforceable ex parte CPO against appellant on October 2, 2020, and that Brendan was a protected party. The CPO prohibited appellant from entering Brendan's place of employment, prohibited her from having contact with Brendan, required her to stay 500 feet away from Brendan "wherever [he] may be found," and required her to leave immediately in the event of an accidental contact with Brendan. Appellant entered Brendan's place of employment, had contact with Brendan at the cash register, and failed to leave immediately. Following appellant's departure from the wine store, Brendan made one phone call to Marjorie. He then notified the police of the CPO violation. In light of the foregoing, there is no genuine issue of material

fact that there was probable cause to support CPO violation charges and that Brendan acted with probable cause and without malice. We note that at the conclusion of appellant's CPO violation trial, the municipal court orally stated that the charges were supported by probable cause.

{¶ 24} The trial court, therefore, did not err in granting summary judgment in favor of Brendan on appellant's malicious prosecution claim. Appellant's first assignment of error is overruled.

{¶ 25} Assignment of Error No. 2:

{¶ 26} THE COURT ERRED IN GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR ABUSE OF PROCESS BECAUSE IT WEIGHED THE EVIDENCE AND CONSTRUED KEY FACTS AGAINST PLAINTIFF.

{¶ 27} Appellant argues the trial court erred in granting summary judgment to Brendan on her abuse-of-process claim because the court failed to consider that Brendan reported the CPO violation in the context of the contentious custody dispute between appellant and Andrew and only after speaking with Marjorie. Appellant asserts that "Brendan was an active participant in the perversion of the CPO trial, by participating in one of the many calls to the police made in an attempt to have [appellant] arrested for violating the CPO," and that the CPO violation charge was filed for the purpose of providing an advantage to Andrew in his ongoing custody dispute with appellant.

{¶ 28} Abuse of process encompasses cases where "legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 297, 1994-Ohio-503. To prevail on an abuse-of-process claim, the plaintiff must establish that (1) a legal proceeding has been set in motion in proper form and with probable cause, (2)

the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed, and (3) direct damage has resulted from the wrongful use of process. *Id.* at 298. "'Abuse of process' differs from 'malicious prosecution' in that the former connotes the use of process properly initiated for improper purposes, while the latter relates to the malicious initiation of a lawsuit which one has no reasonable chance of winning." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 271, 1996-Ohio-189, quoting *Clermont Environmental Reclamation Co. v. Hancock*, 16 Ohio App.3d 9, 11 (12th Dist.1984). There is no liability for abuse of process where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. *Yaklevich* at 298, fn. 2.

{¶ 29} We find that there is no genuine issue of material fact regarding appellant's abuse-of-process claim because appellant failed to present evidence establishing Brendan's ulterior motive.

{¶ 30} In his affidavit, Brendan averred he was scared when appellant entered the wine store because he was aware of the conflict between appellant, Andrew, and Marjorie and believed appellant was a dangerous and unstable person. Brendan further averred he reported the CPO violation for his own protection. Appellant did not provide competent summary judgment evidence to show otherwise.

{¶ 31} There is no summary judgment evidence that Brendan had an ulterior motive in reporting appellant's CPO violation to the police. Although Andrew was involved in a protracted and contentious custody dispute with appellant, there is no summary judgment evidence, other than Brendan's relationship with Andrew, that suggests Brendan reported the matter to the police to give Andrew some advantage in the custody dispute. The only evidence concerning Brendan's call to Marjorie was to ask her what he should do. There is no evidence of what Marjorie told Brendan that would suggest he reported the matter to

the police with such an ulterior motive.

{¶ 32} Appellant invites us to speculate that Marjorie told Brendan to report the CPO violation to the police to assist Andrew in the custody dispute and that Brendan agreed. However, Brendan had nothing to gain by reporting the CPO violation to the police and there is no evidence as to the content of Brendan's telephone conversation with Marjorie. Although there may be issues as to whether Marjorie had an ulterior motive in advising Brendan what to do about the CPO violation (presumably to call the police), there is nothing to suggest he shared that ulterior motive. The mere fact of Brendan's family relationship with Marjorie and Andrew does not create a genuine issue of material fact that Brendan acted in concert with Marjorie and Andrew to gain an advantage in the pending custody litigation. The only conduct of Brendan relied upon by appellant as creating a genuine issue of material fact regarding her abuse-of-process claim is a call to Marjorie and a single call to the police. *Walsh v. Walsh*, 4th Dist. Lawrence No. 08CA4, 2008-Ohio-5701; *Cantrell v. Deitz*, 10th Dist. Franklin No. 12AP-357, 2013-Ohio-1204, ¶ 26-30.

{¶ 33} The trial court, therefore, did not err in granting summary judgment in favor of Brendan on appellant's abuse-of-process claim. Appellant's second assignment of error is overruled.

{¶ 34} Assignment of Error No. 3:

{¶ 35} THE COURT ERRED IN GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BECAUSE IT WEIGHED THE EVIDENCE AND CONSTRUED KEY FACTS AGAINST PLAINTIFF.

{¶ 36} Appellant argues the trial court erred in granting summary judgment to Brendan on her claim for intentional infliction of emotional distress because the court failed to consider that Brendan reported the CPO violation in the context of the contentious

- 10 -

custody dispute between appellant and Andrew and only after speaking with Marjorie.

{¶ 37} To prevail on a claim of intentional infliction of emotional distress, the plaintiff must show that (1) the defendant either intended to cause emotional distress or knew or should have known the actions taken would result in serious emotional distress to the plaintiff, (2) the defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) the defendant's actions proximately caused psychological injury to the plaintiff, and (4) the plaintiff suffered serious emotional distress of a nature that no reasonable man could be expected to endure it. *Ward v. Oakley*, 12th Dist. Butler No. CA2013-03-031, 2013-Ohio-4762, ¶ 35. Parties generally cannot be held liable for intentional infliction of emotional distress for having performed an act they were legally entitled to perform. *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 49 (10th Dist.); *Sears Roebuck & Co. v. Swaykus*, 7th Dist. Jefferson No. 02 JE 8, 2002-Ohio-7183, ¶ 12.

{¶ 38} The requirement that the conduct be "extreme and outrageous" is high. It is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. *Reamsnyder v. Jaskolski*, 10 Ohio St.3d 150, 153 (1984). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* It is the act, rather than the result, that must be outrageous and extreme. *Scott v. Spearman*, 115 Ohio App.3d 52, 58 (5th Dist.1996). Whether conduct is "outrageous and extreme" is initially a question of law for the court. *Stakich v. Russo*, 8th Dist. Cuyahoga No. 20 CA 109392, 2021-Ohio-

1098, ¶ 27.

**{¶ 39}** We find that there is no genuine issue of material fact regarding appellant's claim of intentional infliction of emotional distress because appellant failed to present evidence establishing the elements of her claim. Specifically, appellant has not demonstrated that Brendan's conduct was extreme and outrageous and has failed to show that she suffered the type of serious emotional distress required to establish a claim of intentional infliction of emotional distress.

**{¶ 40}** Appellant asserts that Brendan's report of the CPO violation to the police was extreme and outrageous given the ongoing contentious custody dispute between appellant and Andrew, the fact Marjorie had called the police several times in an attempt to find appellant in violation of the CPO, and the timing of Brendan's report a mere four days before the second custody hearing.

**{¶ 41}** Brendan was a protected person under the ex parte CPO against appellant when she entered Brendan's place of employment. Brendan made a single report to the police about the CPO violation. Brendan was legally entitled to report the CPO violation and the report and subsequent charge against appellant were supported by probable cause. *Morrow*, 2009-Ohio-2665 at ¶ 49; *Sears*, 2002-Ohio-7183 at ¶ 12. Moreover, initiating a police report and cooperating with a police investigation are not "utterly intolerable" acts in a civilized community and do not rise to the level of extreme and outrageous conduct necessary to support a claim of intentional infliction of emotional distress. *Stakich*, 2021-Ohio-1098 at ¶ 27, citing *Matthias v. Wendy's of Pearl, Inc.*, 8th Dist. Cuyahoga No. 71721, 1997 Ohio App. LEXIS 4227, *10 (Sept. 18, 1997). Brendan's report of the CPO violation does not constitute a conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

{¶ 42} Moreover, appellant has failed to establish that she suffered the type of serious emotional distress required to establish a claim of intentional infliction of emotional distress. *See Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374 (1983). In order to constitute serious emotional distress, "the injury that is suffered must surpass upset or hurt feelings, and must be such that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances in the case.'" *Ward*, 2013-Ohio-4762 at ¶ 37; *Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983). The person claiming serious emotional distress must present some "guarantee of genuineness" in support of his or her claim to prevent summary judgment. *Ward* at ¶ 38. A plaintiff can supply this genuineness with expert medical testimony or with testimony of lay witnesses who are acquainted with the plaintiff and who "testify as to any marked changes in the emotional or habitual makeup that they discern in the plaintiff." *Id.* at ¶ 39, citing *Paugh* at 80.

{¶ 43} Appellant's complaint simply alleged that she suffered "humiliation, embarrassment, fear, anxiety, mental anguish, and emotional distress," and that she has difficulty sleeping at night. Likewise, her affidavit simply avers that she has suffered "severe emotional distress." Appellant provided no evidence establishing that her fear, anxiety, and mental anguish rendered her unable to function in daily life, or that she sought or received any medical treatment for emotional distress resulting from the October 2, 2020 incident giving rise to her lawsuit. *Stancik v. Deutsche Natl. Bank*, 8th Dist. Cuyahoga No. 102019, 2015-Ohio-2517, ¶ 44-45; *Crable v. Nestle USA, Inc.*, 8th Dist. Cuyahoga No. 86746, 2006-Ohio-2887 (summary judgment on a claim for intentional infliction of emotional distress is appropriate when the plaintiff presents no testimony from experts or third parties as to the emotional distress suffered and where the plaintiff does not seek medical or psychological treatment for the alleged injuries).

{¶ 44} The trial court, therefore, did not err in granting summary judgment in favor of

Brendan on appellant's claim of intentional infliction of emotional distress. Appellant's third assignment of error is overruled.

{¶ 45} Assignment of Error No. 4:

{¶ 46} THE COURT ERRED IN GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR CIVIL CONSPIRACY BECAUSE IT WEIGHED THE EVIDENCE AND CONSTRUED KEY FACTS AGAINST PLAINTIFF.

{¶ 47} A civil conspiracy is a "malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages." *Betzko*, 2022-Ohio-999 at ¶ 32. The elements of civil conspiracy are (1) a malicious combination, (2) two or more persons, (3) injury to person or property, and (4) existence of an unlawful act independent from the actual conspiracy. *Mangelluzzi v. Morley*, 8th Dist. Cuyahoga No. 102272, 2015-Ohio-3143, ¶ 54. An action for civil conspiracy cannot be maintained unless an underlying unlawful act is committed. *Wells Fargo v. Smith*, 12th Dist. Brown No. CA2012-04-006, 2013-Ohio-855, ¶ 53.

{¶ 48} We have held that the trial court properly granted summary judgment to Brendan on all of appellant's claims discussed above. Without an underlying tort, appellant cannot establish a claim for civil conspiracy. *Id.* at ¶ 54; *Betzko* at ¶ 33. Consequently, the trial court did not err in granting summary judgment to Brendan on appellant's civil conspiracy claim.

{¶ 49} Appellant's fourth assignment of error is overruled.

{¶ 50} Judgment affirmed.

HENDRICKSON and PIPER, JJ., concur.